**BROWNSVILLE NAVIGATION DISTRICT and Missouri Pacific Railroad Company, d/b/a Union Pacific Railroad Company and Missouri Pacific Truck Lines, Appellants,**

v.

**Guadalupe IZAGUIRRE, Individually, et al., Appellees.**

No. 13–89–290–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 4, 1990.

Rehearing Overruled Nov. 8, 1990.

Appellants' Rehearing Overruled Nov. 8, 1990.

Appellants' Second Motion for Rehearing Overruled Dec. 6, 1990.

Richard Hoffman, Hoffman & Hoffman, Brownsville, James England, Roger Townsend, Ben Taylor, Madelyn DeWoody, Fulbright & Jaworski, Houston, for appellants.

Richard Schechter, Houston, Alberto Villegas, Brownsville, for appellees.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Appeal is taken from the jury trial of a wrongful death and survival lawsuit. The jury found negligence on the part of appellants Brownsville Navigation District (BND), Missouri Pacific Railroad Company and Missouri Pacific Truck Lines.[1] Based upon the jury's verdict, the trial court awarded money damages to appellees, the decedent's beneficiaries. MOPAC and BND each assert four points of error. We affirm.

Epigmenio Izaguirre was fatally injured at work when a 7,000 lb. steel coil fell and crushed him. Izaguirre worked at a warehouse located at the Port of Brownsville on land leased by his employer, Fosforo, Inc. The lessor and owner of the land was BND.

In May of 1987, the owner of some of the steel coils stored at the warehouse instructed Fosforo to ship five coils to Chicago. The coils would be loaded onto a trailer and shipped by truck to San Antonio, then the trailer would be loaded "piggyback" on a MOPAC railroad flatcar bound for Chicago. At the owner's request, Fosforo contacted Alamo Express (the trucking company which, several times earlier that week, had transported steel coils from the warehouse) and instructed them to deliver a trailer for loading by Fosforo employees. The Alamo driver picked up an empty trailer at the MOPAC terminal in San Antonio and delivered it to the warehouse. He "spotted" the trailer by backing it up to the Fosforo dock and lowering the trailer's dolly legs to support the front end of the trailer when the tractor was later removed. Because the ground on which the trailer stood was dirt and it was raining, the surface was soaked and muddy. To keep the dolly legs from sinking into the ground, the driver placed a large wooden board under them. Fosforo kept a board leaning against the warehouse, for just such an occasion. The driver then removed the tractor and drove off.

Shortly thereafter, Fosforo employees began to load the trailer. In the course of loading the coils, an employee drove a forklift into the trailer, a fully enclosed "van trailer," as opposed to a flatbed. The coils were "blocked" by nailing wooden wedges into the floor of the trailer; this procedure was intended to keep the coils from moving. At the time of the accident, the forklift operator was inside the trailer and placing a second coil on the floor, waiting for Izaguirre to finish blocking the first coil before removing the forks from the second. Izaguirre was kneeling next to the first coil on the right-hand side, nailing in the wedges, when the board under the dolly legs broke. The trailer fell onto its right side.

---

**1.** Because it is undisputed that an agency relationship existed between Missouri Pacific Truck Lines and Missouri Pacific Railroad Company, both wholly owned subsidiaries of Union Pacific Corporation, we will treat them as one and the same, referring to them collectively as MOPAC.

Izaguirre was pinned under the coil. He bled to death.

This accident was the second at the Port of Brownsville, involving both a trailer supplied by MOPAC and an overturn occurring during loading. In May of 1982, another man was injured; the van trailer he was loading overturned when the board supporting the dolly legs broke. The trailer was spotted on muddy ground by a MO-PAC driver. In May of 1984, the injured man sued MOPAC and BND. Both parties filed general denials. Fosforo and its employees were never informed about this prior accident.

The trailer involved in the present suit was manufactured by Fruehauf Corporation, sold to XTRA Corporation, leased and maintained by CSX Transportation and MOPAC, and delivered by Alamo Express, Inc. Although all of these companies were originally named as defendants in this suit, MOPAC is the only one before us on appeal.

By its first point of error, MOPAC contends that the trial court erred by granting appellees' motion for leave to file a post-verdict amendment to their pleadings (an eleventh amended original petition). Considering *only* appellees' prior pleadings (the tenth amended original petition) and the proof adduced at trial, we find sufficient support for the judgment. Thus, even if the trial court erred, MOPAC could not have been harmed by the post-verdict amendment. *See* Tex.R.App.P. 81(b)(1).

Appellees' tenth amended original petition alleged the following acts of negligence on the part of MOPAC:

(1) In failing to warn users about the proper method for setting up this type trailer or instruct when the trailer is going to be loaded without the benefit of a tractor hooked up to the trailer;

(2) In failing to warn or instruct users about the proper methods of setting up the trailer;

(3) In failing to ascertain what the trailer was going to be used for before leasing it to Alamo Express, Inc.;

(4) In failing to warn or instruct about the limitations of the use of the trailer;

(5) In failing to maintain a proper safety program;

(6) In failing to properly inspect, adjust and/or maintain the trailer brakes prior to releasing the trailer to Alamo Express, Inc.;

(7) In allowing the trailer to be used to haul steel coils; and

(8) In failing to warn about the dangers of spotting trailers at the Port of Brownsville.

*Without objection,* the trial court submitted a broad form negligence question to the jury: "Did the negligence, if any, of those named below proximately cause the occurrence in question?" Thus, any of the pled acts or omissions which are supported by the evidence will, in turn, support the judgment. *See Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986); *Scott v. Atchison T. & S.F. Ry.,* 572 S.W.2d 273, 282 (Tex.1978) (on rehearing). After reviewing the record, we believe several of the alleged acts and omissions are supported by sufficient evidence; nonetheless, for the sake of brevity, we discuss only one—MOPAC's failure to maintain a proper safety program.

The evidence at trial revealed that MOPAC distributed a circular to Fosforo which, according to MOPAC's regional manager, was intended to show shippers and motor carriers the prescribed methods for properly loading trailers. While MOPAC's regional manager contended that the circular portrayed a reliable method for securing the coils, the other witnesses disagreed. Howard Bosscher, appellees' safety expert, testified that the method described by the circular was not only unsafe but also illegal, as it violated federal regulations which require the coils to be secured by "tie-downs." Gary Nelson, co-defendant XTRA's safety consultant, testified that federal regulations require any coil weighing more than 5,000 lbs. to be strapped to the frame of the trailer, not just blocked. He further testified that the circular failed to mention this fact and wholly failed to show the proper and legal method for loading these coils.

■ Any variance between pleadings and proof is rarely a source of harmful error. *Fruehauf Corp. v. Ortega*, 687 S.W.2d 777, 782 (Tex.Civ.App.—Corpus Christi 1985, no writ) (per curiam). Moreover, pleadings are to be construed liberally, particularly when the complaining party has not filed any special exceptions. *See Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 496 (Tex.1988). Finally, when an issue is submitted broadly and no objection is made to the broad submission, the judgment will not be reversed simply because one or more acts contributing to the injury was not particularly pled. *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931, 938 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

■ Appellees pled MOPAC's failure to maintain a proper safety program. MOPAC did not specially except to this pleading. MOPAC's intent to include this circular as part of its safety program can reasonably be inferred from the evidence, especially in light of the fact that MOPAC employees would be exposed to any dangers created by improperly loaded trailers when the trailers were returned for transport on MOPAC railcars. Because appellees' allegation in their tenth amended petition is not misleading and is adequately supported by the evidence, the trial court's ruling on any subsequent amendment is simply irrelevant. *Cf. Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938 (Tex. 1990) (in which a post-verdict amendment was necessary to conform the pleadings to the jury's verdict). Point one is overruled.

■ By its second point of error, MOPAC argues that, as a matter of law, it owed no duty to the decedent, Izaguirre. The Restatement (Second) of Torts § 324 A(c) (1965) provides, in relevant part:

> One who undertakes ... to render services to another which he should recognize as necessary for the protection of a third person ... is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if the harm is suffered because of reliance of

the other or third person upon the undertaking.

A party that voluntarily undertakes an affirmative course of action for the benefit of others has a duty to exercise reasonable care in performing the action. *Colonial Savings Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex.1976); *see also Roberson v. McCarthy*, 620 S.W.2d 912, 914 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.) (quoting § 324 A). When MOPAC distributed the circular, purporting to instruct on the proper loading procedures, MOPAC assumed a legal duty to exercise reasonable care in its preparation and dissemination. Upon distribution to Fosforo, MOPAC incurred a legal duty to third persons such as Izaguirre. Point two is overruled.

■ Through MOPAC's third and fourth points of error, it challenges the legal and factual sufficiency of the evidence to support the jury's finding of proximate cause. In a negligence cause of action, the plaintiff must prove that the defendant's negligent conduct proximately caused the injury. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). Proximate cause consists of cause-in-fact ("but for") and foreseeability. *Id.*

■ When considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen'l Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.), and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

The evidence showed that, of the trailers available to MOPAC, flatbed trailers were the only ones suitable for transporting steel coils. When loading a flatbed, no one gets on the trailer to nail wooden wedges to the floor. The coils are loaded by the forklift from the side, and the driver se-

cures them with tie-downs after all coils are loaded. If MOPAC's circular had contained the *proper* instructions for loading 7,000 lb. steel coils, Fosforo would have been unable to follow its directions—Fosforo would have known that it needed a flatbed trailer. Had one been used, Izaguirre and the forklift would not have been on it, if and when it overturned.

Izaguirre was injured while kneeling next to a 7,000 lb. steel coil, in front of a forklift, in an enclosed trailer, spotted on muddy ground, nailing wedges into the floor. Based upon both the unsafe loading practices urged by MOPAC and its knowledge of the virtually identical prior overturn of one of its van trailers at the Port, we find the evidence legally and factually sufficient to satisfy the cause-in-fact and foreseeability components of proximate cause. Points three and four are overruled.

■ By its first point of error, BND complains of the trial court's denial of its motion for summary judgment. It is axiomatic that when a party unsuccessfully moves for summary judgment and subsequently loses at a trial on the merits, the order denying the motion is not appealable. *See Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). Point one is overruled.

■ By its second and fourth points of error, BND contends that it owed no legal duty to Izaguirre. As stated earlier, BND owned the land and leased it to Fosforo. On two separate grounds, we disagree with BND's contention. First, the Restatement (Second) of Torts § 358(1) (1965) provides:

A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if (a) the lessee does not know or have reason to know of the condition or the risk involved, and (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

Section 358(1) applies to the facts of this case. This principle of law conforms with the ordinary tort duty imposed in this State upon a premises owner to a licensee. The premises owner owes a licensee a duty not to injure willfully, wantonly, or through gross negligence; *except*, when the owner had *knowledge of a dangerous condition* and the licensee does not, the owner has a duty to warn. *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 132–33 (Tex. App.—Corpus Christi 1984, writ ref'd n.r. e.). Thus, a landowner's liability turns on whether it acted reasonably in light of what it knew or should have known about the risks accompanying a premises condition. *Cf. Exxon Corp. v. Quinn*, 726 S.W.2d 17 (Tex.1987) (although the Court held that the landowner owed no duty to an independent contractor's employee, the landowner had no prior knowledge of a dangerous condition on the premises).

■ The man injured in the 1982 overturn accident at the Port sued BND as lessor and owner of the land on which the accident occurred. In his petition, he alleged that BND was negligent by failing to inspect and determine that the place was unsafe and unstable for loading, unloading and parking trailers. On May 21, 1984, BND was served with the petition. Thus, BND had knowledge of a lessee's claim that BND's land was unstable and unsafe for the loading of trailers. It is undisputed that Fosforo had no similar knowledge. We find that BND, as a lessor with knowledge, owed a legal duty to warn Fosforo.

Because Fosforo was leasing unimproved land, we emphasize that BND's duty arose soley from its knowledge of an unreasonable risk of harm. We express no opinion of whether BND had any duty to provide a safe loading surface to its lessees or whether it had any duty to insure that safe loading procedures were followed.

■ Second, testimony of a defendant's employee which establishes a standard of

care can be used to create a legal duty. *Figure World, Inc. v. Farley*, 680 S.W.2d 33, 36 (Tex.App.—Austin 1984, writ ref'd n.r.e.). At trial, the deputy director of the Port of Brownsville (an employee of BND) testified that although he was never told about the 1982 accident, if he had been told, he would have notified the other lessees of the dangerous situation. Thus, BND itself has established the standard of care.

Given BND's knowledge of the alleged dangerous condition existing on the premises, its lessee's lack of knowledge, and the Port director's testimony, we conclude that BND had a legal duty to warn. Points two and four are overruled.[2]

 BND complains, by point three, that the trial court erred in refusing to submit jury questions on the issue of Fosforo's negligence. An employer's negligence may not be considered in a third-party negligence action brought by an employee arising out of an accidental injury covered by workers' compensation insurance. *Varela v. American Petrofina Co. of Texas, Inc.*, 658 S.W.2d 561, 562 (Tex.1983); *see also Sappington v. Younger Transportation, Inc.*, 758 S.W.2d 866, 868 (Tex. App.—Corpus Christi 1988, writ denied). If an injured employee recovers from a third party whose negligence contributed to the injury, the negligent third party is barred from seeking contribution or indemnity from the employer. *Varela*, 658 S.W.2d at 562. BND was not entitled to a jury question regarding Fosforo's negligence.

 With this point, BND argues that the issue of Fosforo's gross negligence

should have been submitted. We need not pass on the merits of BND's argument because BND tendered jury questions solely directed to the issue of Fosforo's negligence; BND did not tender any questions concerning Fosforo's gross negligence. BND has waived the complaint. *See* Tex. R.Civ.P. 278. Point three is overruled.

The judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

On motion for rehearing, appellant MOPAC contends that it was denied due process because the appellees, not the appellants, should have had the burden to prove beyond a reasonable doubt that the trial court's granting of the post-verdict trial amendment was harmless. MOPAC cites a criminal case, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to support its position.[1]

### ERROR

 The burden of proof in civil cases is, and always has been, on the party appealing from the trial court's judgment to show error in the judgment. *See Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987); *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.1968); *Central Nat'l Gulfbank v. Comdata Network, Inc.*, 773 S.W.2d 626, 627 (Tex.App.—Corpus Christi 1989, no writ). Further, the standard of review for a trial court's order granting leave to file a post-verdict trial amendment is "abuse of discretion." *See Bell v. Meeks*, 725 S.W.2d 179, 180 (Tex.1987); *Yo-*

---

**2.** Within its discussion of point four, BND declares, "Finally, Appellant Brownsville Navigation District alleges that there was no evidence to support the percentage of negligence attributed to Brownsville Navigation District by the jury in its final verdict." This naked allegation is neither asserted by a point of error nor argued in the brief. Under these circumstances, we decline to address it. *See* Tex.R.App.P. 74(d), (f).

**1.** The standard for reversible error in criminal cases is found in Tex.R.App.P. 81(b)(2) (emphasis ours):

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines *beyond a reasonable doubt* that the error made no contribution to the conviction or the punishment.

Because of its "beyond a reasonable doubt" language, Rule 81(b)(2) places the burden of proof upon the State in criminal appeals to demonstrate that the appellant suffered no harm in the trial court proceedings. *Taylor v. State*, 755 S.W.2d 548, 550 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

well v. Piper Aircraft Corp., *703 S.W.2d 630, 634–35 (Tex.1986);* Shearer v. Allied Live Oak Bank, *758 S.W.2d 940, 944 (Tex. App.—Corpus Christi 1988, writ denied). The party alleging abuse of discretion has the burden to show abuse of discretion.* See Simon v. York Crane & Rigging Co., Inc., *739 S.W.2d 793, 795 (Tex.1987);* All-right, Inc. v. Van Scoyoc, *784 S.W.2d 942, 944 (Tex.App.—Houston [14th Dist.] 1990, no writ). MOPAC was properly assigned the burden of showing the trial court's abuse of discretion.*

### REVERSIBLE ERROR

■ It is not enough, however, for a party seeking reversal to show error. It must show reversible error—harm. The measure for reversible error in *civil* cases is set out in Tex.R.App.P. 81(b)(1) (emphasis ours):

No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of appellant as was *reasonably calculated to cause and probably did cause the rendition of an improper judgment* in the case, *or* was such as *probably prevented the appellant from making a proper presentation of the case* to the appellate court....

The burden is on the *appellant* to demonstrate 81(b)(1) harm. *Wakefield v. Bevly,* 704 S.W.2d 339, 348 (Tex.App.—Corpus Christi 1985, no writ); *see also Boatland v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980). On appeal, MOPAC could not show harm by the trial court's granting of the post-verdict amendment because the judgment was adequately supported by the pre-verdict pleadings; consequently, even assuming the trial court's action was erroneous, the post-verdict amendment did not cause the rendition of an improper judgment. There simply was no harm. Again, the burden to show 81(b)(1) harm was properly placed upon appellant MOPAC. It just failed to meet its burden.

MOPAC also argues that the post-verdict amendment was in fact harmful under the second prong of the 81(b)(1) test, i.e., that the amendment prevented MOPAC from making a proper presentation of its case to this Court. Specifically, MOPAC contends that it had no way of knowing whether the trial court's judgment would be reviewed under the theories pled before the verdict or the alleged "new" theories pled post-verdict. This argument is altogether untenable.

■ The purpose of the second prong of the 81(b)(1) harm test is to provide a new trial when a party, due to no fault of its own, is unable to develop the record below, resulting in the appellate court's inability to consider the appellant's arguments. *See, e.g., Rogers v. Rogers,* 561 S.W.2d 172, 173 (Tex.1978) (appellant unable to obtain a statement of facts) (citing *Robinson v. Robinson,* 487 S.W.2d 713 (Tex.1972)); *Alvarado v. Reif,* 783 S.W.2d 303, 305 (Tex. App.—Eastland 1989, no writ) (no statement of facts); *Mountain Corp. v. Rose,* 737 S.W.2d 22, 24–25 (Tex.App.—El Paso 1987, writ denied) (no record made of default proceedings); *Houston Lighting & Power Co. v. Boyles,* 456 S.W.2d 714, 721 (Tex.Civ.App.—Beaumont 1970), *rev'd on other grounds,* 464 S.W.2d 359 (Tex.1971) (trial court denied appellant its right to perfect a bill of exceptions); *Groves v. Rosenthal,* 371 S.W.2d 792, 793 (Tex.Civ.App. —Houston 1963, writ ref'd n.r.e.) (trial court failed to make additional findings of fact relating to ultimate and controlling issues).

■ There is nothing in the trial court's action, allowing the post-verdict amendment, that in any way prejudiced MOPAC's ability to have this Court review the factual and legal sufficiency of the evidence supporting the jury's findings. MOPAC was not prevented from challenging the jury's verdict under both sets of pleadings.

An 81(b)(1) harm analysis is the vehicle by which an appellate court determines the reversibility of the judgment, not the difficulty of the appeal. Although a trial court's rulings may have the effect of generating a more burdensome appeal for the

appellant seeking reversal, it does not follow that the appellant has been prevented from making a proper presentation of its case. An appellant has no inherent right to an easy appeal.

Out of an abundance of caution, we decline to hold unequivocally that a party could never present a situation where trial court error, unrelated to the ability to obtain and present a proper appellate record, reaches the point of preventing a proper presentation on appeal. Nonetheless, we hold that MOPAC was not prevented in any way from making a proper presentation of its case to this Court. MOPAC's motion for rehearing is denied.