BROWNSVILLE NAVIGATION DIS-
TRICT, Missouri Pacific Railroad Com-
pany, and Missouri Pacific Truck
Lines, Petitioners,

v.

Guadalupe IZAGUIRRE, Individually
and a/n/f of Brenda Izaguirre et
al., Respondents.

No. D–0720.

Supreme Court of Texas.

May 6, 1992.

Rehearing Overruled June 10, 1992.

**160**

Richard S. Hoffman, Brownsville, Ben Taylor, Roger Townsend, Houston, for petitioners.

Richard Schechter, Houston, Alberto Villegas, Brownsville, for respondents.

## OPINION

HECHT, Justice.

We limit our consideration of this case to a single issue: whether an unreasonably dangerous condition of leased premises caused the death of the lessee's employee so that the lessor may be held liable. We conclude that there is no evidence of such a condition.

Brownsville Navigation District leased Fosforo, Inc. unimproved land on which Fosforo built and operated a warehouse. On the occasion in question, a trailer obtained from MOPAC[1] was backed up to the warehouse dock to be loaded with cargo for shipment. The trailer was disconnected from its tractor, its front end resting on its extendable supports. A board was placed under the front supports to keep them from sinking into the ground, soft and muddy from recent rains. While the trailer was being loaded, the board broke, the trailer fell to one side, and the cargo shifted, crushing and killing Epigmenio Izaguirre, a Fosforo employee working inside the trailer. A similar accident had occurred five years earlier at another location owned by the District.

Izaguirre's wife and children brought this wrongful death action against the District, MOPAC and others. A jury assessed damages totalling $2,612,000 and assigned responsibility for the accident 25% to the District, 35% to MOPAC, and 40% to another defendant which settled, together with several other defendants, prior to trial for $1 million. The District and MOPAC elected a percentage credit for the settlement amount, and the trial court rendered judgment on the verdict against them jointly and severally. The trial court limited the

District's liability under the Texas Tort Claims Act to $100,000. Tex.Civ.Prac. & Rem.Code § 101.023(b).[2]

MOPAC and the District appealed. The court of appeals affirmed the judgment against the District on two grounds: first, that the District as lessor failed to warn of a dangerous condition of the premises unknown to the lessee Fosforo that made it unsafe to load trailers there; and second, that the District had a duty to warn Fosforo of the prior accident and failed to do so. 800 S.W.2d 244. On the record before us, a judgment against the District cannot rest on either ground.

■ As a general rule, "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." Restatement (Second) of Torts § 356 (1965) [hereinafter Restatement]. To meet this rule, plaintiffs argue that the dangerous condition of the premises which existed when Fosforo took possession and later caused Izaguirre's death was the ground itself, which, like most ground, turned to mud in the rain. Plaintiffs do not contend that the ground was of some unusual composition so that it became extraordinarily soft or muddy in the rain. It was, in plaintiffs' words, "plain dirt". Plaintiffs' contention appears to be that the ground should have been surfaced with some harder material which would not have given way in the circumstances of this case. Plain dirt which ordinarily becomes soft and muddy when wet is not a dangerous condition of property for which a landlord may be liable.

■ The court of appeals determined that this case falls within one of the several exceptions to the general rule, specifically, section 358(1) of the Restatement, which states:

---

**1.** MOPAC refers collectively to Missouri Pacific Railroad Company and Missouri Pacific Truck Lines.

**2.** "Liability of a unit of local government under [the Tort Claims Act] is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death...."

A lessor of land who conceals or fails to disclose to its tenant any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or sublessee for physical harm caused by the condition after the lessee has taken possession, if (a) the lessee does not know or have reason to know of the condition or of the risk that was involved, and (b) the lessor knows or has reason to know of the condition, and realizes or should have realized the risk and has reason to expect that the lessee would not discover the condition or realize the risk.

Again, the only dangerous condition asserted by plaintiffs in this case is that the ground became soft and muddy when wet, like any ordinary dirt. This is not a condition "which involves unreasonable risk of physical harm to persons on land", nor is it a condition of which Fosforo would not know, or at least not have reason to know. The District is not liable for Izaguirre's death under section 358 of the Restatement.

■ The second ground of liability upon which the court of appeals relied is that the District breached its duty to warn Fosforo about the prior, similar accident. The court of appeals imposed the duty to warn on the District based upon the testimony of a managerial employee, the deputy director of the Port of Brownsville, that had he known of the prior accident, he would have told Fosforo about it. The witness went on to state, however, that this is only what he, personally, would have done; he denied that it was a standard practice to which the District held itself. This testimony simply reflects the personal concerns of one employee; it does not establish a duty that the District voluntarily undertook and negligently executed. Nor does it provide a legal basis for imposing on the District a duty to warn.

■ Plaintiffs assert an additional theory of liability on which the court of appeals did not rely. They contend that the District is liable for Fosforo's actions because it retained general control over the land. Restatement §§ 360–361. Plaintiffs argue that the District retained control by means of the provisions in its lease and its authority to enact ordinances governing the property and its use. The lease does not support plaintiffs' argument; it contains no provision giving the District the right to control Fosforo's warehouse operation. While it is possible for the District to have used its governmental power to regulate Fosforo's business, the District is immune from liability for its discretionary decision to exercise or not to exercise such power. TEX.CIV.PRAC. & REM.CODE § 101.-021. In sum, there is no evidence that the District retained control over the premises so as to be liable for Fosforo's actions.

Inasmuch as plaintiffs have failed to demonstrate any basis in this record for imposing liability on the District, we grant the District's application for writ of error and without hearing oral argument, reverse the judgment of the court of appeals as it pertains to the District, and render judgment that plaintiffs take nothing against the District. TEX.R.APP.P. 170. MOPAC's application for writ of error is denied, and the judgment against it remains undisturbed.

Dissenting opinion by DOGGETT, J., joined by MAUZY and GAMMAGE, JJ.

DOGGETT, Justice, dissenting.

Epigmenio Izaguirre was crushed to death by a seven thousand pound steel coil. His violent death was not instantaneous; he lay trapped and bleeding, asking a co-worker who stood helplessly nearby to "resa por mi"—pray for me. The majority says that his family must be denied relief today because this tragedy occurred on "ordinary soil." I dissent.

Izaguirre had been loading the heavy coils on a trailer at the Port of Brownsville when a board, laid under the vehicle's legs on the soft, wet and muddy ground, broke. The trailer overturned, and he was pinned under the weight of a steel coil. The Deputy Director of the Port testified that if he had been made aware of a previous serious

accident that had occurred under similar circumstances, he certainly would have alerted users of its property to this danger. A jury in Cameron County, Texas, found that a proximate cause of the damages suffered by the Izaguirre family was the negligence of the property owner, Brownsville Navigation District. The trial court rendered judgment on the verdict; the court of appeals unanimously affirmed. 800 S.W.2d 244.

Disagreeing with the jury, a majority of this court overturns the verdict, without even according the Izaguirre family the benefit of presenting oral argument. This is accomplished in four steps: recharacterizing contentions; taking judicial notice of facts concerning a complex subject, the nature of Texas soil; weighing the credibility of the testimony of a witness; and misconstruing the Restatement (Second) of Torts. Because I would affirm the decision of the citizens of Cameron County, I dissent.

First, today's opinion tells us what the deceased's family has not argued, speculates on what they "appear" to argue, and ignores what they did argue:

> Plaintiffs do not contend that the ground was of some unusual composition so that it became extraordinarily soft or muddy in the rain.... Plaintiffs' [sole] contention appears to be that the ground should have been surfaced with some harder material which would not have given way in the circumstances of this case.

Maj. op. at 160. Although the plaintiffs alleged that Brownsville Navigation had failed to provide a firm surface for loading, their trial pleadings also identify three other negligent acts as having caused Izaguirre's death: failure to maintain the premises; failure to warn about the dangerous condition of the premises; and failure to warn about the dangers posed by supporting a trailer on wood placed over wet or soft surfaces at the Port of Brownsville.

Having recently displayed its expertise in matters geological, *see Gifford Hill & Co. v. Wise County Appraisal Dist.,* 827 S.W.2d 811, 816–17 (Tex.1991) (concluding that limestone is not a mineral), today we are dazzled by the court's knowledge of things agricultural:

> Plain dirt which ordinarily becomes soft and muddy when wet is not a dangerous condition of property for which a landlord may be liable.... [T]he only dangerous condition asserted by plaintiffs in this case is that the ground became soft and muddy when wet, like any ordinary dirt.

Maj. op. at 160. Any rancher, farmer or backyard gardener in this great state is well aware that there is no such thing in Texas as "ordinary dirt." The growth and development of Texas is deeply rooted in the variety of soils covering its geographically diverse 168.3 million acres. The differences are apparent in color—the reds of East Texas and the tans of West Texas—in the textures—coastal sands and central clays—and in permeability—ask someone who has been caught in a Houston rainstorm. Although the United States Soil Conservation Service has identified more than 35 different soil series in Cameron County,[1] this court opines that Brownsville Navigation had no responsibility to warn concerning the hazard posed under certain conditions by "ordinary dirt."

The proper focus of inquiry is not on "ordinary dirt,"[2] but the unusual conditions present and the reoccurrence of the hazard. At trial, photographs of the ground at the accident scene were introduced, and several witnesses testified regarding the "soft yard," observing that the ground was exceedingly wet, with standing puddles.

Mr. Izaguirre was not the first victim to suffer from conditions such as this. There had been a similar accident—an overturned

---

1. United States Dep't of Agric. Soil Conservation Serv., Soil Survey of Cameron County, Texas (1977).

2. The court attributes to the Izaguirres the description of the surface as "plain dirt." Counsel for the plaintiffs did use the phrase "plain old

dirt" in deposing a witness to establish that the land was unimproved. It by no means appears to be an admission that the conditions on the site did not impose an unreasonable risk when wet and muddy.

trailer on wet, muddy ground at the Port of Brownsville causing severe injuries. Pictures of the site of the prior occurrence were also admitted into evidence, as well as testimony that the ground was unusually soft and that as to the two accidents "all [the circumstances] appear to be the same."

The significance of this prior similar accident was magnified by the testimony of the Deputy Director of the Port of Brownsville. His deposition testimony, read at trial, established that, had he known of prior injuries attributable to the ground conditions, he would have notified lessees. He also testified that it "would appear logically" that other employees of Brownsville Navigation should take the same precautions. The majority, with the conclusory comment that this "simply reflect[ed] the personal concerns of one employee," relies solely on that manager's attempted qualification at trial of his prior statement. Maj. op. at 161. Rather than straightforwardly following the rule that this court must consider only the evidence and inferences that tend to support the jury's findings, and disregard all evidence and inferences to the contrary, *see, e.g., Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex. 1992), the majority first misconstrues the above supportive testimony and then seizes upon it to contradict and overturn the verdict.

The Izaguirres not only offered evidence of an unusual condition, but also showed that this was the second mishap of this type on the same kind of soft ground, demonstrating that the condition "involves unreasonable risk of physical harm to persons on the land." Restatement (Second) of Torts § 358(1) (1965). That provision would impose liability on a lessor who

> fails to disclose ... any condition, *natural* or artificial, which involves an unreasonable risk to physical harm to persons on the land ... if (a) the lessee does not know or have reason to know of the condition *or the risk involved,* and (b)

the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee would not discover the condition *or realize the risk.*

*Id.* (emphasis added). The court focuses only on the lessee's knowledge of the condition—the wet, muddy ground—and not its knowledge *of the risk that was involved—* the danger of a trailer overturning. The Restatement is thus misconstrued to relieve Brownsville Navigation of the duty to warn of a danger known to it but not to its lessee. How many accidents will it take before safety becomes a legal obligation? If another victim is killed tomorrow by a trailer overturned under similar circumstances, today's opinion would still not impose the duty to warn.

With an analysis that is as clear as mud, the majority once again expresses a preference for second-guessing the public-spirited citizens who serve as jurors.[3]

MAUZY and GAMMAGE, JJ., join in this dissenting opinion.

**3.** *See LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 1992 WL 86363 (Tex.1992) (Doggett, J., dissenting); *Greater Houston Transp. Co. v. Phil-* *lips,* 801 S.W.2d 523, 527 (Tex.1990) (Doggett, J., dissenting).