Gary A. KUKIS, Appellant,

v.

Jayme NEWMAN, Appellee.

No. 14–03–00127–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 20, 2003.

Mark D. Wilson, Bellaire, for appellant.

Elliott M. Cin, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices JOHN S. ANDERSON and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

Appellee Jayme Newman sued her landlord, appellant Gary A. Kukis, for injuries she sustained when she fell on stairs inside a home she and her husband leased from Kukis. A jury found Newman and Kukis

each fifty percent negligent and found total damages of $45,500. The trial court rendered judgment on the verdict and, after credits and offsets, awarded Newman $18,750 plus pre and post-judgment interest.[1] Under the facts of this case, we conclude Kukis owed no duty to Newman, and we reverse and render judgment that Newman take nothing.

## FACTUAL AND PROCEDURAL BACKGROUND

Newman and her husband, James, leased a house from Kukis in early November 1999. The lease provided in part, "Tenant has inspected and accepts the Property AS IS except for conditions materially affecting the safety or health of ordinary persons or unless expressly noted otherwise in this Lease." The lease also provided the landlord was to pay for repairing a condition caused by the landlord's negligence or a condition that was not the tenant's obligation to pay and "that adversely affects the health or safety of an ordinary tenant."

Before executing the lease, the Newmans had viewed the home for about thirty minutes in late afternoon. As they walked around the house, there was no electricity and visibility was poor. Because the Newmans had small children, they were concerned about open spindles at the top of a staircase between the first and second floor and also about the lack of a barrier at the top of the stairs. The Newmans did not notice the lack of a handrail on the staircase. Kukis knew there once had been a handrail in the house, but the previous occupant had removed it. Kukis did

not tell the Newmans there had once been a handrail on the staircase.

The Newmans moved into the house two weeks after signing the lease. The morning after the move, Mrs. Newman fell as she was carrying her one-year-old son down the set of stairs to the first floor. The accident occurred when Newman's right heel caught only the edge of the second-to-last step, causing her to fall forward onto the entryway. As a result, she broke her ankle.

The Newmans sued Kukis and three other parties, alleging multiple causes of action including negligence for failing to (1) exercise ordinary care in inspecting the residence for unsafe conditions, (2) exercise ordinary care in maintaining the residence, including the staircase, (3) provide adequate warnings of the unsafe condition of the staircase, (4) properly and timely repair the stairway, including failing to install appropriate handrails, and (5) perform obligations under the lease agreement.[2] Before trial, the Newmans settled with one defendant and nonsuited two others, and the Newmans' causes of action against Kukis were tried to a jury.

At the close of the Newmans' case, Kukis moved for a directed verdict on the ground a landlord has no duty to tenants or their invitees for dangerous conditions on the leased premises. Kukis noted the exception for areas over which a landlord retains control and argued his reservation of the right to come onto the property to inspect and make repairs was not sufficient to invoke that exception. The trial court denied the motion.

Kukis subsequently objected to the jury charge on the ground there was no duty on

1. Before trial, Newman settled with another defendant for $4,000.

2. James Newman also brought suit individually and on behalf the Newmans' two children. James alleged loss of consortium, loss of household services and loss of income, and loss of parental support on behalf of the children.

his part in relation to the leased property, and there was at least a fact issue on the right of control, requiring the control issue to be submitted to the jury. The trial court overruled the objection and submitted the standard charge for invitees, instructing the jury Kukis was negligent with respect to a condition of the premises if (1) the condition posed an unreasonable risk of harm, (2) Kukis knew or reasonably should have known of the danger, and (3) Kukis failed to exercise ordinary care to protect Newman from the danger by both failing to adequately warn Newman of the condition and failing to make that condition reasonably safe.[3] The jury answered the question affirmatively, found Kukis and Newman each fifty percent negligent, found Jayme Newman sustained total damages of $45,500, and found James Newman sustained zero damages.

Kukis filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, to disregard the jury's findings. The court rendered judgment on the verdict, and Kukis filed a motion for new trial, which the trial court denied.

## DISCUSSION

### Issues One and Two

■ In issues one and two, Kukis challenges the trial court's rendition of judgment on the verdict. He argues that, as a landlord, he owed no duty to Newman in relation to the staircase where Newman's fall occurred.

■ A plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976). Duty is the threshold inquiry in a negligence case. *Lampasas v.*

*Spring Center, Inc.*, 988 S.W.2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). The existence of a duty is a question of law for the court to decide based on the specific facts of the case. *Lampasas*, 988 S.W.2d at 433 (citing *Mitchell v. Missouri–Kansas–Texas R.R.*, 786 S.W.2d 659, 662 (Tex.1990), *overruled on other grounds by Union Pac. R. Co. v. Williams*, 85 S.W.3d 162, 169 (Tex.2002)). To submit the negligence question to the jury, the trial court implicitly concluded Kukis owed a duty to warn Newman about the condition of the staircase and to make the condition safe. For the reasons that follow, we hold the trial court erred as a matter of law in concluding Kukis owed Newman a duty.

■ In a premises liability case, the duty owed depends on the relationship between the parties. *Id.* Compare *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3–4 (Tex.1996) (owner/invitee), *with Johnson Co. Sheriff's Posse v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996) (lessor/lessee). "A lessor generally has no duty to tenants or their invitees for dangerous conditions on the leased premises." *Endsley*, 926 S.W.2d at 285 (citing *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 160 (Tex.1992), in turn, citing RESTATEMENT (SECOND) OF TORTS § 356 (1965)). This rule originates from the notion that a lessor relinquishes possession or occupancy of the premises to the lessee. *Lampasas*, 988 S.W.2d at 434 n. 3 (citing *Endsley*, 926 S.W.2d at 285).

■ Texas courts, however, recognize three exceptions to this general no-duty rule. *Id.* A lessor may be liable for inju-

---

**3.** *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRAC-
TICE, PREMISES & PRODUCTS PJC 66.4 (2002).

ries arising from (1) the lessor's negligent repairs, (2) concealed defects of which the lessor was aware when the premises were leased, and (3) a defect on a portion of the premises that remained under the lessor's control. *Id.* (citing *Endsley,* 926 S.W.2d at 285); *see also* RESTATEMENT (SECOND) OF TORTS §§ 357 (regarding negligent repairs), 358 (regarding concealed defects); 360 (regarding portion of premises remaining in lessor's control).

■■ Newman relies on the second exception: failure to disclose a concealed defect.[4] When there is no agreement by the landlord to repair the premises and he is not guilty of fraud or concealment by failing to disclose defects existing when the lease is made, he is not liable to the tenant for injuries caused by such defects. *Flynn v. Pan Am. Hotel Co.,* 143 Tex. 219, 224, 183 S.W.2d 446, 448 (1944). "The tenant takes the property as he finds it, assuming the risk of apparent defects." *Id.*

In *Brownsville Navigation District v. Izaguirre,* for example, the supreme court declined to apply the concealed defect exception. In that case, the family of Epigmenio Izaguirre sued the navigation district, which had leased unimproved land to Epigmenio's employer. 829 S.W.2d 159, 160 (Tex.1992). The employer built a warehouse on the property. *Id.* The district retained no control over the employer's warehouse activities. *Id.* at 161. Epigmenio was killed when a trailer he was loading fell to one side, and the cargo shifted, crushing him. *Id.* at 160. The trailer had been resting on a board which kept it from sinking into soft mud created by a recent rain. *Id.* When the board broke, the trailer fell, with Epigmenio inside. *Id.* A similar accident had occurred five years before at another location the district owned. *Id.*

The family's theory of liability was that the district, as lessor, had a duty to warn the employer of a dangerous condition, specifically that the leased ground became soft and muddy when wet. *Id.* They also contended the ground should have been surfaced with a harder material that would not have given way. *Id.* The supreme court disagreed, applying the general rule that "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." *Id.* at 160–61 (quoting RESTATEMENT (SECOND) OF TORTS § 356 (1965)). The court rejected the family's attempt to invoke an exception to the general lessor no-duty rule, *i.e.,* the exception that a lessor is subject to liability when the lessee does not know or have reason to know of an unreasonable risk of harm, and the lessor knows of the risk and has reason to expect that the lessee would not discover the condition or the risk. *See id.* at 161 (quoting RESTATEMENT (SECOND) OF TORTS § 358 (1965)). The supreme court observed:

> [T]he only dangerous condition asserted by plaintiffs in this case is that the ground became soft and muddy when

---

**4.** Newman did not submit a question to the jury on whether Kukis concealed the lack of a handrail. Thus, to the extent she did not conclusively prove concealment, we question her ability to rely on this theory on appeal. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex.1990) (stating "when the facts are disputed, the issue of control is one of fact that must be decided by the trier of fact," and noting a "problem," in plaintiff-appellee's argument that defendant-appellant controlled taxi-cab driver—who shot plaintiff-appellee—when plaintiff-appellee failed to submit jury question on control); *see also Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991) (stating existence of a legal duty is question of law for the court although in some instances it may require resolution of disputed facts or inferences inappropriate for legal resolution).

wet, like any ordinary dirt. This is not a condition "which involves unreasonable risk of physical harm to persons on land", *nor is it a condition of which [the employer] would not know, or at least not have reason to know.* The District is not liable for Izaguirre's death under section 358 of the Restatement.

*Id.* at 161 (emphasis added). Just as the condition of the soil in *Brownsville* was not a condition of which the tenant would not have reason to know, so the absence of the handrail in the present case is not a condition the Newmans would not have had reason to know or that Kukis would have had reason to suspect the Newmans would not discover.

The older case of *Flynn v. Pan American Hotel Co.* is also instructive. Flynn, an employee of a hotel leased from the Pan American Hotel Company, was injured when the back elevator on the floor on which he was standing dropped and he was caught between the elevator and the wall. *Flynn*, 143 Tex. at 221, 183 S.W.2d at 447. The elevator had two sides but no front and no back. 143 Tex. at 222, 183 S.W.2d at 447. There were no doors on the elevator itself, but a wire mesh door covered the entrance to the elevator shaft to keep people from falling into the shaft when the elevator was up. *Id.* When Flynn was injured, the elevator was not equipped with interlocking doors or any device to prevent its ascent or descent when the door or gate of the elevator was open. *Id.* A witness or witnesses testified about a defective condition in the direction lever of the elevator, *i.e.*, a spring that held the lever in neutral position was broken or missing and a jar would cause the direction lever to drop and the elevator to move. 143 Tex. at 222–23, 183 S.W.2d at 447. There was evidence tending to prove Flynn would not have been injured had the elevator been equipped with interlocking doors or a similar safety device or if the direction lever had been repaired. 143 Tex. at 223, 183 S.W.2d at 447. Citing a long line of cases, the supreme court concluded:

The absence of interlocking doors or similar device to prevent the moving of the elevator was a defect or dangerous condition existing when the lease was executed. *This defect or dangerous condition was apparent and there is no contention that respondent concealed it from the lessee.* The rule in this state and in the other states, or most of them, is that when there is no agreement by the landlord to repair the premises and he is not guilty of fraud or concealment by failing to disclose defects existing when the lease is made, he is not liable to the tenant, or the employees or others entering under the tenant, for injuries caused by such defects. The tenant takes the property as he finds it, assuming the risk of apparent defects.

143 Tex. at 224, 183 S.W.2d at 448 (citations omitted) (emphasis added).

Just as the absence of interlocking doors was an apparent condition in *Flynn,* so the absence of a handrail was an apparent condition in the present case. Although Newman contends Kukis should have warned her about the absence of the handrail, there is no evidence he concealed the lack of a handrail from her. *See also Gray v. Block,* 416 S.W.2d 848, 850 (Tex.Civ. App.-Eastland 1967, no writ) (citing *Flynn* and holding landlord not liable for injury tenant's son incurred in fall from porch when "porch to such residence with no rail or banister thereon was a prominent physical object located on the premises at the time appellant took possession under the lease").

To determine whether a defendant is under a duty, we "consider several

interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co.*, 801 S.W.2d at 525. Foreseeability of the risk is " 'the foremost and dominant consideration.' " *Id.* (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

In the present case, there was evidence the cost of reinstalling the handrail was negligible: approximately thirty minutes of time and $31.00 in supplies. Notwithstanding Kukis's testimony that staircases are "inherently dangerous," there is no evidence anyone ever fell on the subject staircase before the occurrence at issue. Moreover, the alleged defective condition on the staircase was not hidden. Finally, there was controverted evidence suggesting the addition of a handrail could complicate moving larger furniture up the stairs. Considering the general no-duty rule found in the Restatement, the lack of any evidence of concealment, and the factors relevant to the imposition of a duty, we hold, under the circumstances of the present case, Kukis owned no duty to Newman.

We sustain Kukis's issues one and two.

### Issues Three and Four

In issue three, Kukis argues the trial court erred in submitting a jury charge that did not contain a question or instruction on his right to control the premises. In issue four, he challenges the trial court's rendition of judgment on the verdict because Newman failed to obtain an affirmative finding on the necessary issue of right of control.

As set forth above, one exception to the general no-duty rule on the part of a lessor applies when the alleged defect is on part of the premises remaining under the les-

sor's control. *Lampasas*, 988 S.W.2d at 434 n. 3 (citing *Endsley*, 926 S.W.2d at 285); Restatement (Second) of Torts § 360. Newman, however, did not rely on the theory of retention of control in the trial court, and concedes on appeal that, at the time of her injury, Kukis did not control or have the right to control the staircase. Accordingly, Kukis's issues three and four have no bearing on the case.

We overrule issues three and four.

### CONCLUSION

We hold, as a matter of law, Kukis owed no duty to Newman in relation to the condition Newman alleges proximately caused her injury. Accordingly, we sustain Kukis's issues one and two and render judgment Newman take nothing on her cause of action against Kukis.