Reversed and rendered and Opinion filed November 20, 2003














Reversed and
rendered and Opinion filed November 20, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00127-CV

____________

 

GARY A. KUKIS, Appellant

 

V.

 

JAYME NEWMAN, Appellee

 

__________________________________________________

 

On Appeal from
the 295th District Court

Harris County, Texas

Trial Court
Cause No. 00-32306

 

__________________________________________________

 

O P I N I O
N

            Appellee Jayme Newman sued her landlord, appellant Gary A. Kukis, for injuries she sustained when she fell on stairs
inside a home she and her husband leased from Kukis.  A jury found Newman and Kukis
each fifty percent negligent and found total damages of $45,500.  The trial court rendered judgment on the
verdict and, after credits and offsets, awarded Newman $18,750 plus pre and
post-judgment interest.[1]  Under the facts of this case, we conclude Kukis owed no duty to Newman, and we reverse and render
judgment that Newman take nothing.




FACTUAL AND
PROCEDURAL BACKGROUND

            Newman and
her husband, James, leased a house from Kukis in
early November 1999.  The lease provided
in part, “Tenant has inspected and accepts the Property AS IS except for
conditions materially affecting the safety or health of ordinary persons or
unless expressly noted otherwise in this Lease.”  The lease also provided the landlord was to
pay for repairing a condition caused by the landlord’s negligence or a
condition that was not the tenant’s obligation to pay and “that adversely
affects the health or safety of an ordinary tenant.”

            Before executing the lease, the Newmans had viewed the home for about thirty minutes in
late afternoon.  As they walked around
the house, there was no electricity and visibility was poor.  Because the Newmans
had small children, they were concerned about open spindles at the top of a
staircase between the first and second floor and also about the lack of a
barrier at the top of the stairs.  The Newmans did not notice the lack of a handrail on the
staircase.  Kukis
knew there once had been a handrail in the house, but the previous occupant had
removed it.  Kukis
did not tell the Newmans there had once been a
handrail on the staircase.

            The Newmans
moved into the house two weeks after signing the lease.  The morning after the move, Mrs. Newman fell
as she was carrying her one-year-old son down the set of stairs to the first
floor.  The accident occurred when
Newman’s right heel caught only the edge of the second-to-last step, causing
her to fall forward onto the entryway. 
As a result, she broke her ankle.

            The Newmans
sued Kukis and three other parties, alleging multiple
causes of action including negligence for failing to (1) exercise ordinary care
in inspecting the residence for unsafe conditions, (2) exercise ordinary care
in maintaining the residence, including the staircase, (3) provide adequate
warnings of the unsafe condition of the staircase, (4) properly and timely
repair the stairway, including failing to install appropriate handrails, and
(5) perform obligations under the lease agreement.[2]  Before trial, the Newmans
settled with one defendant and nonsuited two others,
and the Newmans’ causes of action against Kukis were tried to a jury.

            At the close of the Newmans’ case, Kukis moved for a
directed verdict on the ground a landlord has no duty to tenants or their
invitees for dangerous conditions on the leased premises.  Kukis noted the
exception for areas over which a landlord retains control and argued his
reservation of the right to come onto the property to inspect and make repairs
was not sufficient to invoke that exception. 
The trial court denied the motion.

            Kukis subsequently
objected to the jury charge on the ground there was no duty on his part in
relation to the leased property, and there was at least a fact issue on the
right of control, requiring the control issue to be submitted to the jury.  The trial court overruled the objection and
submitted the standard charge for invitees, instructing the jury Kukis was negligent with respect to a condition of the
premises if (1) the condition posed an unreasonable risk of harm, (2) Kukis knew or reasonably should have known of the danger,
and (3) Kukis failed to exercise ordinary care to
protect Newman from the danger by both failing to adequately warn Newman of the
condition and failing to make that condition reasonably safe.[3]   The jury answered the question affirmatively,
found Kukis and Newman each fifty percent negligent,
found Jayme Newman sustained total damages of
$45,500, and found James Newman sustained zero damages.

            Kukis
filed a motion for judgment notwithstanding the verdict (JNOV), or in the
alternative, to disregard the jury’s findings. 
The court rendered judgment on the verdict, and Kukis
filed a motion for new trial, which the trial court denied.

DISCUSSION

Issues One and Two 

            In issues one and two, Kukis challenges the trial court’s rendition of judgment on
the verdict.  He argues that, as a
landlord, he owed no duty to Newman in relation to the staircase where Newman’s
fall occurred.

            A plaintiff must prove the existence
and violation of a duty owed to him by the defendant to establish liability in
tort.  Abalos v. Oil Dev. Co., 544 S.W.2d 627, 631 (Tex.
1976).  Duty is the threshold inquiry in
a negligence case.  Lampasas v. Spring Center, Inc., 988 S.W.2d 428, 433 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (citing Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex.
1990)).  The existence of a duty is a
question of law for the court to decide based on the specific facts of the
case.  Lampasas, 988 S.W.2d at 433 (citing Mitchell v. Missouri-Kansas-Texas R.R., 786 S.W.2d 659, 662 (Tex. 1990), overruled on other grounds by Union Pac. R.
Co. v. Williams, 85 S.W.3d 162, 169 (Tex.2002)).  To submit the negligence question to the
jury, the trial court implicitly concluded Kukis owed
a duty to warn Newman about the condition of the staircase and to make the
condition safe.  For the reasons that
follow, we hold the trial court erred as a matter of law in concluding Kukis owed Newman a duty.

            In a premises liability case, the
duty owed depends on the relationship between the parties.  Id.  Compare
Motel 6 G.P., Inc. v. Lopez, 929 S.W.2d 1, 3–4 (Tex. 1996)
(owner/invitee), with Johnson Co.
Sheriff’s Posse v. Endsley, 926 S.W.2d 284, 285 (Tex. 1996) (lessor/lessee)).  “A lessor generally has no duty to tenants or their invitees
for dangerous conditions on the leased premises.”  Endsley, 926 S.W.2d at 285 (citing Brownsville Navigation Dist. v. Izaguirre,
829 S.W.2d 159, 160 (Tex. 1992), in
turn, citing Restatement (Second) of
Torts § 356 (1965)).  This rule
originates from the notion that a lessor relinquishes
possession or occupancy of the premises to the lessee.  Lampasas,
988 S.W.2d at 434 n.3 (citing Endsley, 926 S.W.2d at 285).

            Texas courts,
however, recognize three exceptions to this general no-duty rule.  Id.  A lessor may be
liable for injuries arising from (1) the lessor’s
negligent repairs, (2) concealed defects of which the lessor
was aware when the premises were leased, and (3) a defect on a portion of the
premises that remained under the lessor’s
control.  Id. (citing Endsley, 926
S.W.2d at 285); see also Restatement (Second) of Torts §§ 357
(regarding negligent repairs), 358 (regarding concealed defects); 360
(regarding portion of premises remaining in lessor’s
control).

            Newman relies on the second
exception: failure to disclose a concealed defect.[4]  When there is no agreement by the landlord to
repair the premises and he is not guilty of fraud or concealment by failing to
disclose defects existing when the lease is made, he is not liable to the
tenant for injuries caused by such defects. 
Flynn v. Pan Am. Hotel Co.,
143 Tex. 219, 224,
183 S.W.2d 446, 448 (1944).  “The tenant
takes the property as he finds it, assuming the risk of apparent defects.”  Id.

            In Brownsville Navigation District v. Izaguierre,
for example, the supreme court declined to apply the concealed defect
exception.  In that case, the family of Epigmenio Izaguirre sued the
navigation district, which had leased unimproved land to Epigmenio’s
employer.  829 S.W.2d 159, 160 (Tex.
1992).  The employer built a warehouse on
the property.  Id.  The district retained no control over the
employer’s warehouse activities.  Id. at
161.  Epigmenio
was killed when a trailer he was loading fell to one side, and the cargo
shifted, crushing him.  Id. at
160.  The trailer had been resting on a
board which kept it from sinking into soft mud created by a recent rain.  Id.  When the board broke, the trailer fell, with Epigmenio inside.  Id.  A similar accident had occurred five years
before at another location the district owned. 
Id.

            The family’s theory of liability was
that the district, as lessor, had a duty to warn the
employer of a dangerous condition, specifically that the leased ground became
soft and muddy when wet.  Id. They also
contended the ground should have been surfaced with a harder material that
would not have given way.  Id. The
supreme court disagreed, applying the general rule that “a lessor
of land is not liable to his lessee or to others on the land for physical harm
caused by any dangerous condition, whether natural or artificial, which existed
when the lessee took possession.”  Id. at 160–61
(quoting Restatement (Second) of Torts
§ 356 (1965)).  The court rejected the
family’s attempt to invoke an exception to the general lessor
no-duty rule, i.e., the exception
that a lessor is subject to liability when the lessee
does not know or have reason to know of an unreasonable risk of harm, and the lessor knows of the risk and has reason to expect that the
lessee would not discover the condition or the risk.  See id.
at 161 (quoting Restatement (Second) of
Torts § 358 (1965)).  The supreme
court  observed:

[T]he only dangerous condition asserted by plaintiffs in this case is
that the ground became soft and muddy when wet, like any ordinary dirt. This is
not a condition “which involves unreasonable risk of physical harm to persons
on land”, nor is it a condition of which [the employer] would not know, or at
least not have reason to know. 
The District is not liable for Izaguirre’s
death under section 358 of the Restatement.

 

Id. at 161
(emphasis added).  Just as the condition
of the soil in Brownsville was not a
condition of which the  tenant would not
have reason to know, so the absence of the handrail in the present case is not
a condition the Newmans would not have had reason to
know or that Kukis would have had reason to suspect
the Newmans would not discover.

            The older case of Flynn v. Pan American Hotel Co. is also
instructive.  Flynn, an employee of a
hotel leased from the Pan American Hotel Company, was injured when the back elevator
on the floor on which he was standing dropped and he was caught between the
elevator and the wall.  Flynn, 143 Tex. at 221,
183 S.W.2d at 447.  The elevator had two
sides but no front and no back.  143 Tex. at 222,
183 S.W.2d at 447.  There were no doors
on the elevator itself, but a wire mesh door covered the entrance to the
elevator shaft to keep people from falling into the shaft when the elevator was
up.  Id.  When Flynn was injured, the elevator was not
equipped with interlocking doors or any device to prevent its ascent or descent
when the door or gate of the elevator was open. 
Id.  A witness or witnesses testified about a
defective condition in the direction lever of the elevator, i.e., a spring that held the lever in
neutral position was broken or missing and a jar would cause the direction
lever to drop and the elevator to move. 
143 Tex. at 222–23,
183 S.W.2d at 447.  There was evidence
tending to prove Flynn would not have been injured had the elevator been
equipped with interlocking doors or a similar safety device or if the direction
lever had been repaired.  143 Tex. at 223,
183 S.W.2d at 447.  Citing a long line of
cases, the supreme court concluded:

            The absence of
interlocking doors or similar device to prevent the moving of the elevator was
a defect or dangerous condition existing when the lease was executed.  This defect or dangerous condition was
apparent and there is no contention that respondent concealed it from the
lessee.  The rule in this state
and in the other states, or most of them, is that when there is no agreement by
the landlord to repair the premises and he is not guilty of fraud or
concealment by failing to disclose defects existing when the lease is made, he
is not liable to the tenant, or the employees or others entering under the
tenant, for injuries caused by such defects. 
The tenant takes the property as he finds it, assuming the risk of
apparent defects.

 

143
Tex. at 224,
183 S.W.2d at 448 (citations omitted) (emphasis added).

            Just as the absence of interlocking
doors was an apparent condition in Flynn,
so the absence of a handrail was an apparent condition in the present
case.  Although Newman contends Kukis should have warned her about the absence of the
handrail, there is no evidence he concealed the lack of a handrail from
her.  See
also Gray v. Block, 416 S.W.2d 848, 850 (Tex. Civ.
App.—Eastland 1967, no writ) (citing Flynn
and holding landlord not liable for injury tenant’s son incurred in fall from
porch when “porch to such residence with no rail or banister thereon was a
prominent physical object located on the premises at the time appellant took
possession under the lease”).

            To determine whether a defendant is
under a duty, we “consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against
the social utility of the actor’s conduct, the magnitude of the burden of
guarding against the injury, and the consequences of placing the burden on the
defendant.”  Greater Houston Transp. Co., 801 S.W.2d
at 525.  Foreseeability
of the risk is “‘the foremost and dominant consideration.’”  Id. (quoting El Chico Corp. v. Poole, 732 S.W.2d 306,
311 (Tex. 1987)).

            In the present case, there was
evidence the cost of reinstalling the handrail was negligible: approximately thirty
minutes of time and $31.00 in supplies. 
Notwithstanding Kukis’s testimony that
staircases are “inherently dangerous,” there is no evidence anyone ever fell on
the subject staircase before the occurrence at issue.  Moreover, the alleged defective condition on
the staircase was not hidden.  Finally,
there was controverted evidence suggesting the
addition of a handrail could complicate moving larger furniture up the
stairs.  Considering the general no-duty
rule found in the Restatement, the lack of any evidence of concealment, and the
factors relevant to the imposition of a duty, we hold, under the circumstances
of the present case, Kukis owned no duty to Newman.

            We sustain Kukis’s
issues one and two.

Issues Three and Four

            In issue three, Kukis
argues the trial court erred in submitting a jury charge that did not contain a
question or instruction on his right to control the premises.  In issue four, he challenges the trial
court’s rendition of judgment on the verdict because Newman failed to obtain an
affirmative finding on the necessary issue of right of control.

            As set forth above, one exception to
the general no-duty rule on the part of a lessor
applies when the alleged defect is on part of the premises remaining under the lessor’s control.  Lampasas, 988 S.W.2d at 434 n.3 (citing Endsley, 926
S.W.2d at 285); Restatement (Second) of
Torts §360.  Newman, however, did
not rely on the theory of retention of control in the trial court, and concedes
on appeal that, at the time of her injury, Kukis did
not control or have the right to control the staircase.  Accordingly, Kukis’s
issues three and four have no bearing on the case.

            We overrule issues three and four.

CONCLUSION

            We hold, as a matter of law, Kukis owed no duty to Newman in relation to the condition
Newman alleges proximately caused her injury. 
Accordingly, we sustain Kukis’s issues one and
two and render judgment Newman take nothing on her cause of action against Kukis.

 

                                                                        /s/        John S. Anderson

                                                                                    Justice

 

Judgment
rendered and Opinion filed November
 20, 2003.

Panel
consists of Chief Justice Brister and Justices
Anderson and Seymore.

 

 











            [1]  Before trial, Newman settled with another
defendant for $4,000.





            [2]  James Newman also brought suit individually
and on behalf the Newmans’ two children.  James alleged loss of consortium, loss of
household services and loss of income, and loss of parental support on behalf
of the children.     





            [3]  See
Comm. On Pattern Jury Charges, State Bar
 of Tex., Texas
Pattern Jury Charges—Malpractice, Premises & Products PJC 66.4 (2002).





            [4]  Newman did not submit a question to the jury
on whether Kukis concealed the lack of a
handrail.  Thus, to the extent she did
not conclusively prove concealment, we question her ability to rely on this
theory on appeal.  See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 526 (Tex.
1990) (stating “when the facts are disputed, the issue of control is one of
fact that must be decided by the trier of fact,” and
noting a “problem,” in plaintiff-appellee’s argument
that defendant-appellant controlled taxi-cab driver—who shot plaintiff-appellee—when plaintiff-appellee
failed to submit jury question on control); see
also Fort Bend County Drainage Dist. v. Sbrusch,
818 S.W.2d 392, 395 (Tex. 1991) (stating existence of a legal duty is question
of law for the court although in some instances it may require resolution of
disputed facts or inferences inappropriate for legal resolution).