**Warren DONALDSON et al., Appellants,**

**v.**

**LIBERTY SIGN COMPANY, Appellee.**

**No. 16888.**

Court of Civil Appeals of Texas.

Fort Worth.

March 1, 1968.

Rehearing Denied March 29, 1968.

Garrett & Garrett, and Rufus S. Garrett, Jr., Fort Worth, for appellants.

Malone, Seay, Gwinn & Crawford, and Durwood D. Crawford and Robert G. Mebus, Dallas, for appellee.

## OPINION

RENFRO, Justice.

This is the latest of a series of suits arising out of the financial woes of Admiral Motor Hotel of Texas, Inc., which have beset it from its beginning.

On July 15, 1963, Liberty Sign Company entered into a rental agreement with the Motel in which plaintiff agreed to construct a neon sign according to specifications contained in the rental agreement and would install the sign at Admiral's place of business in Arlington, Texas. Defendant agreed to pay eighty-four consecutive monthly payments, beginning at $150 per month and which, on a graduated scale, would reach $650 per month in years six and seven of the lease.

Defendants Donaldson and Parker jointly and severally guaranteed prompt payment of the rent payments.

The sign was erected and put into use. Rent was paid until December 31, 1964. Thereafter no rental money was paid to plaintiff. Six months after Admiral ceased to make payments, plaintiff removed the sign and later sued the Motel and the guarantors for damages.

Based on a jury verdict, judgment was entered for plaintiff for $26,428.56 actual damages and $6,000 attorneys' fees.

Only Donaldson and Parker, the guarantors, appealed. They will be referred to as appellants.

In twelve points of error appellants attack the jury findings as being without supporting evidence, or against the overwhelming preponderance of the evidence, wherein the jury found the design and structure of the sign were agreed upon before appellants executed the warranty; that plaintiff built and maintained the sign in compliance with the agreement; that a reasonable cost to plaintiff of maintaining the sign in the future would have been $8,718.44; that plaintiff was not guilty of negligence in removing the sign, and contend as a matter of law plaintiff failed to exercise reasonable care in minimizing its damages, that removal of the sign proximately caused plaintiff to suffer substantially more damages than it would have sustained if the sign had not been removed.

Although all points are well and ably briefed, we think appellants' principal complaint and the main source of their dissatisfaction is concisely stated by them on page 5 of their brief: "This case presents the unusual contention by a Lessor of personal property that it is entitled, upon default of rental payments by the Lessee, to destroy the subject matter of the lease and recover its prospective profits. Appellants contend that such action by Lessor in increasing its damages by destruction of the valuable sign breached its duty to minimize its damages

and its duty to minimize the damages to its guarantors. Although other important grounds for reversal of the case are presented * * * Appellants feel that question of breach of duty to minimize damages is the most important and far reaching aspect of this case. Should Appellee possess the contractual right to destroy intentionally the subject matter of its rental contract and recover its damages in full, equity should prevent the exercise of such an unconscionable right."

The rental contract is partly printed, partly typed.

In the contract plaintiff agreed to hold Motel harmless from any liability (except from Motel's negligence) due to operation and maintenance of the sign. Plaintiff was to carry insurance, secure and pay for all public permits, licenses, or inspection fees, repair any and all future damage to the sign so as to restore same to conform to the original specifications, and to maintain the sign in good working order.

The contract provided that in the event of default in payment, plaintiff might, at its option, terminate the agreement and remove the sign, and, in such event, the unpaid rent for the unexpired portion of the agreement should become immediately due and payable.

The evidence shows that because of the location of the motel it was of great importance that the sign be so placed and with such height it could be seen from the Dallas-Fort Worth Toll Road and from the Six Flags area. It was agreed the sign would be seventy feet high.

After exhaustive study of terrain, etc., sketches were made. The sign was constructed, erected and put in use. There was never any complaint the sign varied in any way from the drawing and the contract. Plaintiff spent more than $20,000 in building and financing the structure.

Plaintiff accepted full responsibility for complete electrical maintenance, replacement of lamps, cleaning, replacement of burned out sockets, wiring, repainting, and periodic inspection.

The Motel changed ownership twice, and at the time of trial a receiver was in charge of the Motel. After December 1, 1964, none of the owners, nor the receiver, would make any rental payments. Plaintiff's maintenance cost, insurance costs, etc., were continuing, so, in the absence of rentals and after exhaustive efforts to collect, decision was made to take the sign down as the contract provided it might.

Operation cost to plaintiff had the lease run its full term was admittedly difficult to compute. The president of plaintiff testified fully, however, as to cost and arrived at the figure $8,608. Different figures could be reached by other methods of calculation, depending largely on how much overall operating expenses of the Company were allotted to the particular sign.

On a firm five year contract the rental value of the sign in place would be $450 to $500 per month. However, no one paid anything after December, 1964, and no owner nor the receiver would agree to pay anything on past, current or future monthly rentals.

The sign in question was custom designed and built for the peculiar needs of the Motel. No other motel could or would use it. Its very large size and its design made it unadaptable for use by other motels. It had no market value. Efforts were made to interest other businesses to purchase it. None were interested. It had only the value of scrap steel. Plaintiff tried, unsuccessfully, to sell it by parts.

In our opinion there is ample evidence that plaintiff used reasonable care to minimize its damages. Prince Line Ltd. v. Steger, 210 S.W. 223 (Tex.Civ.App., 1918, writ ref.); Stanley Manly Boys' Clothes v. Hickey, 113 Tex. 482, 259 S.W. 160 (Tex. Com.App., 1924); Barron G. Collier, Inc., v. Peter Bros., 124 S.W.2d 904 (Tex.Civ. App., 1939, no writ hist.).

Plaintiff introduced evidence by its president, and other evidence, that all questions of design of the sign and the structure upon which it was to be placed were agreed upon before Donaldson and Parker signed the rental agreement.

The jury so found.

The jury found that $8,718.44 would have been the cost to plaintiff to have performed its part of the contract from the date the sign was removed to the end of the lease term had the contract been fully completed.

■ Also, the jury found the reasonable cash salvage value of the sign after its removal to be $120. There was evidence of probative force to support the answers to the above issues, as well as all the issues answered by the jury, and the findings are not against the great preponderance of the evidence.

Considering the jury verdict and undisputed evidence, the court calculated the damages as follows:

| "Total rentals due | |
|---|---|
| under lease | $37,200.00 |
| "Less payments | 2,700.00 |
| "Less Lessor's future | |
| expense | 8,718.44 |
| "Plus cost of sign removal | 767.00 |
| "Less cash salvage value of | |
| sign | 120.00 |
| | $26,428.56." |

Thereupon judgment was entered for plaintiff for the sum of $26,428.56, plus $6,000 attorneys' fees.

■ Some of plaintiff's elements of prospective damages were difficult to prove with mathematical certainty. Mathematical exactness, however, is not required. Dixie Glass Co. v. Pollak, 341 S.W.2d 530, 91 A.L.R.2d 662 (Tex.Civ.App., 1960, writ ref., n. r. e.).

The Supreme Court held in City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 (1943): "Profits which would have been earned by an established business, absent any interference therewith, are in their very nature more or less conjectural, uncertain, and speculative, but this does not deprive the party injured by such interference of his right to recover. In other words, the difficulties which may lie in the way of making proof will not defeat a recovery. It is not necessary that damages in the form of loss of profits should be susceptible of exact calculation. All that is required is that they be ascertained with a reasonable degree of certainty. 13 Tex. Jur. p. 207, § 108, and authorities there cited."

■ Plaintiff's attorney testified fully regarding the amount and kind of work, including work hours, expended in preparation and trial of the case. The parties agreed for the court to fix the amount of attorney's fees. The court awarded plaintiff $6,000. No complaint is made of this amount, except that appellants want that amount reduced in the event this court reduces the amount of the judgment on damages. We do not reduce the amount of the judgment.

All points of error have been considered separately and collectively and each and all are overruled.

Judgment affirmed.