McCULLEY FINE ARTS GALLERY,
INC., Appellant,

v.

"X" PARTNERS; a/k/a "The Texas
Bunch"; David McCall, Martin Mass-
man and Gail Cooper, Appellees.

No. 08–92–00190–CV.

Court of Appeals of Texas,
El Paso.

June 9, 1993.

Robert K. Dowd, Julie Kay Baker, Simpson, Dowd & Moon, Dallas, for Massman.

Kristin A. Nilsson, Tom Thomas, Beth Ann Blackwood, Kolodey & Thomas, Dallas, for McCulley Fine Arts Gallery, Inc.

Anthony A. Petrocchi, Weil & Petrocchi, Dallas, for Gail Cooper.

Lewis L. Isaacks, Gay & McCall, Inc., Plano, TX, for "X" Partners a/k/a "The Texas Bunch".

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal and cross-appeal from the trial court's granting of motions for summary judgment in favor of both Appellant and Appellees. McCulley Fine Arts Gallery, Inc., Appellant, originally brought its action for breach of contract and breach of fiduciary duty. The Gallery appeals the granting of summary judgment in favor of "X" Partners, a/k/a "The Texas Bunch," David McCall, Martin Massman and Gail Cooper, Appellees. Cross–Appellant, Martin Massman, appeals the denial of his special appearance as well as the granting of summary judgment in favor of Appellant on Massman's counterclaims. We reverse the judgment of the trial court in part and affirm it in part.

## I. SUMMARY OF THE EVIDENCE

The record in the instant case shows that in the fall of 1989, the Appellees David McCall, Delwin Morton (later non-suited), Martin Massman, and Gail Cooper, constituting the partnership " 'X' Partners" a/k/a "The Texas Bunch," approached Don McCulley of McCulley Fine Arts Gallery, Inc. requesting that he locate paintings for the Partnership on a commission basis. It is Don McCulley's efforts to provide the Partnership with a Van Gogh painting entitled "Roadway in a Paris Park" (the Van Gogh), which are the subject of this litigation. In December 1989, Don McCulley, acting on behalf of the Gallery, obtained an option on the Van Gogh for $3 million and offered it to the Partnership for $3.5 million which included a $500,000 commission for the Gallery. However, Appellees failed to agree to those terms and further negotiations ensued. On December 23, 1989, Don McCulley met with Appellees (in some cases, their representatives) in Gail Cooper's office where an oral agreement was reached whereby the Gallery was asked to become a "partner" in the transaction and postpone payment of any commission until after the resale of the Van Gogh. According to the new agreement, Martin Massman, who was to fund the initial purchase, would receive $3 million upon resale, while McCulley Fine Arts Gallery, Inc. would receive the next $500,000 plus 10 per-

cent of the profits over $3.5 million. The other partners, McCall and his father, Morton and Cooper were also to share in the profits above $3.5 million. Subsequent to that meeting, Don McCulley discontinued other efforts to sell the Van Gogh, notified the seller that the Gallery was exercising its option and took all steps necessary to close the sale of the Van Gogh to the Partnership. Despite repeated assurances that the Partnership would purchase the Van Gogh, Massman never provided the necessary funds to effect the purchase of the painting and, as a result, the option to purchase the painting expired. Based on the above facts, McCulley Fine Arts Gallery, Inc. filed suit against the Partnership alleging breach of contract and breach of fiduciary duty. Appellees "X" Partners, David McCall and Delwin Morton originally filed general denials but, thereafter, McCall and Morton filed specific denials as to the existence of a partnership. Appellee Cooper likewise filed a general denial and included various "special denials," including a denial as to the existence of a partnership. Massman, a California resident, responded to the petition on April 4, 1990 by filing a special appearance. Massman's special appearance was denied on February 18, 1991 which resulted in his filing his answer denying liability. Massman additionally counterclaimed for fraud, violations of the Deceptive Trade Practices Act, breach of good faith and fair dealing, violations of Rule 13 of the Texas Rules of Civil Procedure and attorneys' fees. On August 8, 1991, Massman filed his motion for summary judgment. Appellees McCall and Cooper likewise filed their motions for summary judgment. All of Appellees' motions for summary judgment were granted by the trial court. The Gallery filed its motion for summary judgment on Massman's counterclaims, which was likewise granted by the trial court. Thus, the Gallery and Massman each appeal the granting of summary judgment against them on their respective claims. Massman further appeals the denial of his special appearance.

## II. DISCUSSION

In its first two points, the Gallery assigns error to the trial court's granting of the defendants' motions for summary judgment on its action for breach of contract. Specifically, the Gallery alleges the trial court erred: (1) in holding that there are no material fact issues as to the existence of a contract between it and defendants; and (2) in holding that there are no material fact issues with respect to its breach of contract claim against defendants.

The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co. Inc.,* 690 S.W.2d 546, 548 (Tex.1985); *Hernandez v. Kasco,* 832 S.W.2d 629 (Tex.App.—El Paso 1992, no writ); *Marsh v. Travelers Indem. Co. of Rhode Island,* 788 S.W.2d 720 (Tex.App.—El Paso 1990, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon,* 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.,* 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez,* 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corp.,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

In the instant case, in order to prevail on their motion for summary judgment, Appellees were required to disprove any one of the

following essential elements of the breach of contract claim brought by the Gallery:

   (i)  a valid contract between the Gallery and defendants;

   (ii)  performance or tender of performance by the Gallery;

   (iii)  breach of the agreement by the Appellees; and

   (iv)  damage to the Gallery as a result of the breach.

*See Stegman v. Chavers*, 704 S.W.2d 793, 795 (Tex.App.—Dallas 1985, no writ).[1]

### A. Existence of Valid Contract

■ A binding contract exists when each of the following elements are established: (1) offer; (2) acceptance in strict compliance with terms of offer; (3) meeting of the minds; (4) communication that each party has consented to terms of the agreement; and (5) execution and delivery of the contract with intent that it become mutual and binding on both parties. *See Garcia v. Villarreal*, 478 S.W.2d 830, 832 (Tex.Civ.App.—Corpus Christi 1971, no writ). Once again, as to the evidence on existence of a contract, the only elements contested by Appellees are acceptance and meeting of the minds.[2]

■ The record in the instant case establishes the existence of summary judgment evidence which pertains to both the acceptance of the contract and meeting of the minds. The evidence shows that an agreement was reached at a meeting held on December 23, 1989 at which Don McCulley, representing the Gallery, and Appellees Gail Cooper and David McCall were present. Others individuals who were to share in the profits after resale of the Van Gogh, although not present at the meeting of December 23, were nevertheless represented. David McCall, who consented to the terms of the meeting, testified that he was acting on behalf of himself, his father and Morton. McCall further stated that Cooper negotiated on behalf of Massman. Accordingly, we find the existence of a fact issue concerning whether acceptance and a meeting of the minds occurred, regardless of whether the specific terms agreed upon were sufficient to constitute a contract.

■ Appellees assert that no contract was formed insofar as the alleged agreement lacked essential and definite terms. Specifically, Appellees contend that the issues of whether the Gallery would receive a commission or an interest in profit, of who would pay the taxes and insurance, of who would take possession and whether the painting was an authentic Van Gogh still remained unresolved. However, as explained above, the evidence indicates that it was agreed that the Gallery would receive a commission after resale. While it is true that a contract, whether written or oral, must define its essential terms with sufficient detail to allow a court to determine the obligations of the parties, *Weitzman v. Steinberg*, 638 S.W.2d 171, 175 (Tex.App.—Dallas 1982, no writ), it is equally true that Texas law also confers upon those same parties the ability to agree upon certain contractual terms and to leave other matters for later negotiation. *Frank B. Hall & Co. Inc. v. Buck*, 678 S.W.2d 612, 629 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720. It is only when an **essential** term of a contract is left open for future negotiations that there is no binding contract. *Bank of El Paso v. T.O. Stanley Boot Co. Inc.*, 809 S.W.2d 279, 285 (Tex. App.—El Paso 1991, affirmed as modified). The record in the instant case reveals that after the meeting of December 23, the essential terms of the purchase of the Van Gogh had been agreed to by the parties. Questions which relate to the payment of taxes and insurance, as well as the determination as to who would take actual possession of the painting, were details which involved the form and not the substance of the transaction. Consequently, we find that the overriding obligations of the parties were mutually agreed upon; these latter terms were not essential to the formation of the contract.

---

**1.** In the instant case, the only elements which the Appellees have put at issue are the existence of a contract and damages.

**2.** Moreover, there is no dispute regarding the existence of the offer of the Van Gogh to the partnership, or in the alternative, to the individual Appellees.

■ While questions relating to payment of taxes and possession upon purchase may have been matters subject to subsequent negotiations, the question as to the authenticity of the painting being purchased was not. Thus, Appellees cannot argue that the question of the determination of authenticity was not a matter agreed upon. The agreement, albeit oral, contemplated the purchase of a specific painting, i.e., "Roadway in a Paris Park" by Van Gogh, the authenticity of which was understood to be a term of that contract. By the very nature of the agreement, the parties entered into an agreement that if the painting were determined not to be authentic, the contract could not be completed. Accordingly, we find that authenticity was not an essential term left open for future negotiation but was an implied "condition precedent" to performance by Massman. *See Sheldon L. Pollack Corp. v. Falcon Indus. Inc.,* 794 S.W.2d 380 (Tex.App.—Corpus Christi 1990, writ denied) (condition precedent to obligation to perform is act or event which occurs after making of contract, but which must occur before there is right to immediate performance and before there is breach of contractual duty).

### B. Damages

■ Appellees assert that the Gallery did not suffer any damages as a result of the Partnership's failure to fund the purchase of the Van Gogh. Generally, the measure of damages for breach of contract is the amount necessary to place the injured party in a financial position equal to that which he would have occupied had the defaulting party performed the contract. *Fuentes v. McFadden,* 825 S.W.2d 772, 776 (Tex.App.—El Paso 1992, no writ). Under the above standard, the injured party is compensated only for the damages or loss actually sustained. *Id.* Although it is incumbent upon the party asserting damages to prove up those damages, that party should not be deprived of that remedy (or in the instant case the ability to show the availability of that remedy) due solely to the difficulty in establishing its damages. *Donaldson v. Liberty Sign Co.,* 425 S.W.2d 901 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).

■ The record in the instant case shows summary judgment evidence sufficient to raise fact issues concerning the following: (1) whether the Gallery would have realized its $500,000 commission upon resale of the painting; (2) whether it was damaged when it ceased other sales efforts based upon the agreement; (3) or when a Mr. Larry Ross stated he would no longer do business with the Gallery; and (4) when the Gallery incurred out-of-pocket expenses in pursuing the purchase of the Van Gogh and in obtaining insurance for it. Consequently, Appellant's Points of Error Nos. One and Two are sustained.

### C. Existence of a Partnership

■ In Point of Error No. Three, the Gallery contends the trial court erred in holding that there are no material fact issues as to the existence of a partnership between it and Appellees, the existence of which being relevant to the Gallery's actions for breach of fiduciary duty and breach of the duty of good faith and fair dealing.

In order to establish the existence of a partnership or joint venture between the Gallery and Appellees, the Gallery was required to show: "(1) a community of interest in the venture; (2) an agreement to share profits; (3) an agreement to share losses, costs or expenses, and; (4) a mutual right of control or management of the enterprise." *Gutierrez v. Yancey,* 650 S.W.2d 169, 171 (Tex. App.—San Antonio 1983, no writ). Appellees contend that no partnership was formed because there was no agreement between the Gallery and Appellees to share profits or losses.

To constitute a partnership, the parties must "participate in the profits and share them as principals of the business, as distinguished from an interest therein as compensation under a profit-sharing agreement." *Id.* at 172; Tex.Rev.Civ.Stat.Ann. art. 6132b, §§ 6, 7 (Vernon 1970). In that regard, Appellees argue that the Gallery never agreed to share in profits *as profits,* but rather only agreed to a share of the profits *as payment* of the $500,000 commission (i.e., as compensation). In support of their argument, Appellees cite a Draft Agreement that Califor-

nia attorney Susan Grode was preparing on behalf of Martin Massman, drafted in apparent contemplation of the execution of a future written contract. The Draft Agreement provided in pertinent part as follows:

> [T]he proceeds shall be allocated as follows: Massman will receive the first Three Million Dollars ($3,000,000); McCulley will receive the next Five Hundred Thousand Dollars ($500,000); and the remaining proceeds shall be allocated fifty percent (50%) to Massman and fifty percent (50%) to the *Representatives* jointly. [Emphasis added].

The Draft Agreement, which was never executed by any of the parties, continues by specifically listing Don McCulley and Gail Cooper as the "representatives." Based on the above designation, as well as other deposition testimony by both Don McCulley and David McCall, Appellees argue that it was Don McCulley, not McCulley Fine Arts Gallery, Inc. that was to actually share in the profits, if any, beyond payment of the commission. Thus, Appellees contend that McCulley Fine Arts Gallery, Inc. never entered into a partnership with them. However, the summary judgment evidence establishes that while it is true McCulley Fine Arts Gallery, Inc. was to share in the profits to recoup its commission, Don McCulley further stated in his affidavit that the Gallery was to receive a 10 percent share in any profits which exceeded $3.5 million. Accordingly, we find the existence of a fact issue concerning whether there was an agreement to share profits.

■ In addition, Appellees argue there was no agreement to share losses. Generally, the absence of a provision to share losses indicates the lack of intent to create a partnership. *Gutierrez*, 650 S.W.2d at 172; TEX. REV.CIV.STAT.ANN. art. 6132b, §§ 6, 7 (Vernon 1970). However, the summary judgment evidence establishes that Don McCulley did incur some amount of expense pursuant to his efforts to purchase and resell the painting.[3] While it is not clear in what capacity

Don McCulley was sharing these expenses (i.e., as a broker or partner), we find the question as to that capacity to be a fact issue. Accordingly, Appellant's Point of Error No. Three is sustained.

In Point of Error No. Four, Appellant asserts the trial court erred in holding that the statute of frauds precludes the Gallery's breach of contract claim.

■ Appellees contend that the agreement to purchase was a "sale of goods" in excess of $500 and that a written contract was therefore required. *See* TEX.BUS. & COM. CODE ANN. § 2.201 (Tex. UCC) (Vernon 1968). Appellant, arguing to the contrary, maintains that the agreement was not one between a "buyer" and a "seller,"[4] but rather, an agreement to purchase from a third party seller, in the nature of an agreement to fund. Therefore, to the extent that the case represents a "failure to fund," it does not fall under the statute of frauds as defined in Section 2.201. *Turner v. PV Int'l Corp.*, 765 S.W.2d 455 (Tex.App.—Dallas 1988), *writ denied per curiam opinion*, 778 S.W.2d 865 (1989) (the statute of frauds held inapplicable where the action was based upon the defendant's failure to fund); *see also Wiley v. Bertelsen*, 770 S.W.2d 878, 881 (Tex.App.—Texarkana 1989, no writ) (alleged oral agreement for the sale of cattle was not a sale of goods where plaintiff was to receive percentage of proceeds of sale in return for services of rendered) and *E.F. Hutton v. Zaferson*, 509 S.W.2d 950, 952 (Tex.App.—San Antonio 1974, writ ref'd n.r.e.) (contract between customer and broker for purchase of shares is not "sale" but rather the broker is an agent and the statute of frauds does not apply). Appellant's Point of Error No. Four is sustained.

In its fifth point of error, Appellant complains that the trial court improperly granted summary judgment based on Appellees' affirmative defense of fraud.

■ To prevail on their affirmative defense of fraud, Appellees were required to

---

3. The record indicates that Mr. McCulley made arrangements to insure the painting.

4. Section 2.106 defines "sale" as the "passing of title from the seller to the buyer for a price." TEX.BUS & COM.CODE ANN. § 2.106 (Tex. UCC) (Vernon 1968).

conclusively prove the following: (1) a false material representation; (2) made with the knowledge that the representation was false or made recklessly without knowledge of its truth; (3) made with the intent that it should be acted upon by another party; (4) the other party has acted on the representation; and (5) has suffered injury from that reliance. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

Appellees contend that Don McCulley, representing McCulley Fine Arts Gallery, Inc., committed fraud by making statements to Massman that the Van Gogh could be purchased for $3 million when in fact, it was actually being offered to Don McCulley for $2.5 million. Appellees maintain that Don McCulley was attempting to secretly obtain a "commission" for the Gallery prior to sale of the painting to the Partnership, as well as a commission upon resale of the painting. Appellees' contention is based on the testimony of Larry Ross, the individual offering the painting to the Partnership, wherein Ross claims the painting was offered to Don McCulley for $2.5 million. The record however, reflects contradictory evidence in that Don McCulley stated that the price offered to him by Ross was $3 million. Thus, it is readily apparent that a fact issue exists regarding the actual offering price of the Van Gogh. Appellant's Point of Error No. Five is sustained.

### Massman's Cross–Points

In twenty-five cross-points, Cross–Appellant Martin Massman claims that the trial court erred in denying his special appearance and in granting summary judgment in favor of the Gallery on Massman's counterclaims.[5]

#### A. Standard of Review

At trial, the burden of proof is on Appellant to establish sufficient allegations to bring Massman within the provisions of the

**5.** The first cross-point assigns error to the denial of Massman's special appearance generally, while the remaining cross-points attack the legal and factual sufficiency of the court's ruling on various grounds.

**6.** Rule 120a(3) of the Texas Rules of Civil Procedure provides that the trial court "shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of the discovery processes, and any oral testimony." Tex.R.Civ.P. 120a(3).

"long-arm" jurisdiction statutes. *Carbonit Houston, Inc. v. Exchange Bank,* 628 S.W.2d 826, 831 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Upon entering a special appearance, the burden of proof then properly shifts to Massman to show lack of amenability to the long-arm process. *Runnells v. Firestone,* 746 S.W.2d 845, 848 (Tex. App.—Houston [14th Dist.] 1988), *writ denied per curiam,* 760 S.W.2d 240 (Tex.1988). On review, it is the duty of this Court to consider all of the evidence that was before the trial court, including the pleadings, any stipulations, affidavits and exhibits, the results of discovery and any oral testimony. *Carbonit,* 628 S.W.2d at 831.[6] It is incumbent upon the parties to request findings of fact and conclusions of law which are reviewable for factual and legal sufficiency. *Runnells,* 746 S.W.2d at 849.

Massman's evidentiary challenges are governed by two distinct standards of review. The applicable standard is determined by whether Massman's challenge is predicated on legal or factual sufficiency grounds.

When presented with a "no evidence" or legal sufficiency challenge, this Court will consider the evidence and all reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987) *citing Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford,* 726 S.W.2d at 16; *Worsham Steel Co.,* 831 S.W.2d at 83.

On the other hand, a factual insufficiency point requires us to examine all of the evidence in determining whether the

finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Oechsner v. Ameritrust,* 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); *Worsham Steel Co.,* 831 S.W.2d at 83. The reviewing court cannot substitute its conclusions for those of the fact finder. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner,* 840 S.W.2d at 136; *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex. App.—El Paso 1981, no writ). It is not within the province of the court to resolve conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the trial court's decision on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner,* 840 S.W.2d at 136.

■ However, as in the instant case, where no conclusions of law or findings of fact are requested or filed, the judgment of the trial court implies all necessary findings of fact to support it, and we may uphold the decision on any legal theory which is supported by the evidence. *Runnells,* 746 S.W.2d at 849. Therefore, as long as there is "some evidence" on any legal theory going to the finding of jurisdiction and that finding is not against the great weight and preponderance of the evidence, we must uphold the decision of the trial court. *Accord, Id.*

Prior to determining whether the jurisdictional evidence is sufficient to establish "minimum contacts," we first examine the evidence that was considered by the trial court. The record in the instant case shows that Massman's general contacts with the State of Texas began in the early 1980's when he obtained a fifty percent (50 percent) ownership interest in M & B Mini–Blind Corporation which operated in Arlington, Texas from the early 1980's until July of 1989. Massman was also an officer and director of that corporation. M & B Mini–Blind Corporation leased a building in Texas, sought and obtained clients in Texas, and employed persons in Texas. Massman himself visited the corporate plant in Texas on at least three occasions prior to 1986.

Beyond his involvement with M & B Mini–Blind Corporation, Massman was a partner in the Sierra Pacific Partnership which owned property in Spring, Texas. This property was foreclosed upon and sold in 1988, and litigation involving the property continued for a time thereafter. As of June 28, 1990, Pacific Sierra Properties (another name for the Sierra Pacific Partnership) and Massman were involved in two lawsuits against Beverly Hills Mortgage Corporation. Although the suits were apparently related, they were filed in two different courts in different Texas counties, and Pacific Sierra Properties and Massman were listed as the defendants in one cause and the plaintiffs in the other. Regarding the latter action, Massman described it as "our claim for title and foreclosure that was done improperly." Again, Massman visited Texas in connection with both lawsuits. Thereafter, Massman attempted to purchase real estate in Collin County, Texas some time in 1989 through 1990, and visited Texas in the process.

Finally, in 1986 or 1987, Massman employed Gail Cooper, a resident of Texas, to assist him in working out some problems he was experiencing with an office building in Spring, Texas. Later, in 1988, he again retained Cooper to look over some property in Nevada and New Mexico and to make a recommendation regarding how to handle the property.

As to the specific incident in question, Massman was contacted in 1989 by Gail Cooper who told him about the possibility of purchasing the Van Gogh and reselling it. In addition, Massman admitted that Cooper negotiated on his behalf during the negotiations over the purchase of the painting, such negotiations taking place in Texas. The issue then becomes whether, based on the above evidence, Massman should have reasonably anticipated the call to a Texas court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

In answering the above question, we are guided by the recent distillation of both Fed-

eral and Texas law as outlined in *Schlobohm v. Schapiro*, 784 S.W.2d 355 (Tex.1990). In accordance with *Schlobohm*, two conditions must be met in order for a Texas court to properly exercise jurisdiction over a non-resident:

(1) the Texas long-arm statute must authorize the exercise of jurisdiction; and

(2) the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process.

*Id.* at 356; see TEX.CIV.PRAC. & REM.CODE ANN. §§ 17.041—17.069 (Vernon 1986).

■■ As to the first prong, the Texas long-arm statute authorizes jurisdiction over those who do business in Texas. *Id.* at § 17.-042; *Schlobohm*, 784 S.W.2d at 356. TEX. CIV.PRAC. & REM.CODE ANN. § 17.042 provides as follows:

In addition to *other acts* that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. (Emphasis added).

TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986).

When Massman retained Cooper to negotiate on his behalf, he arguably brought himself within the statute by engaging in specific acts constituting "doing business;" namely, he contracted with Texas residents (Don McCulley of McCulley Fine Arts Gallery, Inc. and the other defendants) concerning the purchase of a painting, such contract to be partially performed in Texas. Furthermore, he recruited Gail Cooper, a resident of Texas, for employment within Texas. Even if these acts were not sufficient, however, the nature of Massman's general contacts can likely be categorized as "other acts" constituting "doing business." Thus, we find the first prong of *Schlobohm* to have been satisfied.

■■ Satisfying the second prong, however, is more problematic, and the Court in *Schlobohm* set out an additional three step analysis embracing the due process requirements of both "general" and "specific" jurisdiction as follows:

(1) the non resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Schlobohm*, 784 S.W.2d at 358.

Whether premised on "specific" or the more demanding showing of "general" jurisdiction, we find that the trial court properly held that Massman had sufficient minimum contacts to subject him to the jurisdiction of the courts of our State. First, as noted above, Massman negotiated with Texas residents, via his Texas representative, Gail Cooper, regarding a contract that would be at least partially performed in this state. The present action arises directly from those negotiations and the purported contract that resulted from the meeting on December 23, 1991. Second, as was the case with the nonresident defendant in *Schlobohm*, the evidence shows that Massman has been involved in Texas business as an investor, stockholder, officer and director, has visited the state and has maintained regular communications with some of its citizens. *Schlobohm*, 784 S.W.2d at 359. This contact with the State of Texas continued for nearly a decade prior to the time this suit was initiated. In addition,

Massman sought affirmative relief in courts of our State just prior to the institution of the present cause. It is clear that Massman purposely availed himself of the benefits of this forum. Finally, we find no evidence in the record that litigation in Texas would be excessively burdensome or inconvenient to him. *Id.* at 359.

We have carefully reviewed the evidence that supports the trial court's findings and find more than a scintilla of evidence to support the finding of jurisdiction over Massman. Moreover, a review of the entire record reveals that the trial court's finding is not against the great weight and preponderance of the evidence. In light of the record before us, we find that the trial court's exercise of jurisdiction over Massman does not offend traditional notions of fair play and substantial justice. Accordingly, Massman's Cross–Points of Error Nos. One through Twenty-two are overruled.

In Cross–Points of Error Nos. Twenty-three through Twenty-five, error is assigned to the trial court's granting of summary judgment in favor of the Gallery on Massman's counterclaims. Massman alleged various claims premised upon the assertion that Don McCulley misrepresented the Van Gogh to be on sale for the purchase price of $3 million, when it was actually being offered to Don McCulley for only $2.5 million, thereby allowing Don McCulley and the Gallery to conceal a $500,000 commission.[7]

■ Among the essential elements of fraud, without which there can be no recovery, is a showing of damages suffered due to the fraud. *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 718 (Tex. App.—Dallas 1989, writ denied). Fraud must be the cause of the claimed loss which is established by "pleading and proof of a pecuniary loss suffered which is directly traceable to and which resulted from the false representation upon which the injured party relied." *Id.* at 718–19; *see also, Teledyne Exploration Co. v. Klotz*, 694 S.W.2d 109, 111 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (holding that complaining

party may recover, as actual damages, compensation for the "proximate results" of the wrongful act). Under the Texas Deceptive Trade Practices Act, the appropriate standard of causation is "producing cause" meaning efficient, exciting or contributing cause and is sometimes called "factual causation." *Riojas v. Lone Star Gas Co., A Div. of Ensearch Corp.*, 637 S.W.2d 956, 959 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.).

■ Once again we have carefully reviewed the evidence, and even assuming that the representation complained of was indeed false, that representation as to the value of the Van Gogh did not cause Massman to spend any more money negotiating the purchase than he otherwise would have spent. The evidence indicates that Massman would have engaged in negotiations to purchase the painting regardless of whether Don McCulley stated the price as $3 million or $2.5 million. Consequently, we find the trial court did not err in granting McCulley Fine Arts Gallery's motion for summary judgment on Massman's counterclaims and overruling Massman's Cross–Points of Error Nos. Twenty-three, Twenty-four and Twenty-five.

Having sustained Appellant's Points of Error Nos. One through Five, and overruled Appellee/Cross–Appellant Massman's Cross–Points One through Twenty-five, we reverse the judgment of the trial court in part, affirm the judgment in part and remand the case to the trial court for proceedings in accordance with this opinion.

■

7. Massman alleged claims for fraud, violations of the Deceptive Trade Practices Act, breach of good faith and fair dealing, that the suit by McCulley was frivolous and sought attorneys' fees.