FURR'S, INC., d/b/a Safeway and
Water Vend, Inc., d/b/a Water
Vend, Appellants,

v.

Athena LOGAN, Appellee.

No. 08–93–00161–CV.

Court of Appeals of Texas,
El Paso.

Jan. 26, 1995.

John P. Levick; Gary M. Bellair, Carr, Fouts, Hunt, Craig, Terrill & Wolfe, L.L.P., Lubbock, for appellants.

Phillip Godwin, Odessa and Larry Zinn, San Antonio, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

Defendants Furr's, Inc. and Water Vend, Inc. appeal from a judgment awarding plaintiff Athena Logan $82,255.24 for damages she sustained in a slip and fall accident. We affirm.

## FACTS

Furr's is a grocery store chain with a retail facility in Odessa, Texas. On the sidewalk outside the store, Water Vend, Inc. placed a coin-operated machine selling purified water for drinking and cooking. On Christmas Day 1989, Furr's was closed but the Water Vend machine was accessible. That day, plaintiff Athena Logan volunteered to purchase water to make ice tea for a large family dinner. She took two five gallon bottles to the Furr's store for that purpose. Her granddaughter, Alicia, accompanied her.

Ms. Logan parked next to the Water Vend machine in the Furr's parking lot. She noticed water pooled around the machine and warned her granddaughter to stay away from it. The weather in Odessa had been cold and the water was at least partially frozen. There had been an ice storm earlier in the week, but Christmas and the day before were clear. Ms. Logan made several trips to the machine, filling one jug and returning with the second. She avoided the ice on the sidewalk as she made these trips, but as she carried the second empty jug to the machine, she slipped on ice in the asphalt parking lot. She testified she never saw that patch of ice before she fell.

Ms. Logan broke her ankle in the fall. She went to the emergency room Christmas afternoon, and wore a cast for almost a year. She had a thyroid condition that complicated her treatment and caused the break to take almost ten times longer than normal to heal. At the time of trial, she was experiencing pain, stiffness, loss of mobility, and loss of flexibility in the ankle.

Furr's assistant manager testified that he had been aware of problems with the leaking Water Vend machine for some time prior to this Christmas Day accident, and had called Water Vend two or three times to complain that the machine was leaking water and was not dispensing properly. On Christmas Eve, he noticed that when people purchased water, the machine would not dispense the full amount into their containers, but water would instead run out from inside the machine onto the sidewalk. He looked for the valve to turn off the water to the machine, but could not find it so he left the machine operable over Christmas. The cold weather caused the water on the sidewalk to freeze, creating what he considered a hazardous condition. Before Christmas, Furr's employees

salted part of the sidewalk because of this condition. He acknowledged that Furr's was responsible for the parking lot and outside premises, although Water Vend was primarily responsible for the care and upkeep of its machine.

A jury found Furr's 60 percent negligent and Water Vend 40 percent negligent in causing the accident. It found no negligence on the part of Athena Logan. The jury awarded damages of:

$ 4,390.00 for past medical care;

2,200.00 for future medical care;

5,000.00 for past physical pain and mental anguish;

7,500.00 for past physical impairment; and

35,000.00 for future physical impairment.

The trial court entered judgment accordingly. Both Furr's and Water Vend appeal.

Furr's brings twenty-two points of error, complaining that: the trial court erred in rendering judgment as Furr's owed no duty to warn of an open and obvious danger; that there was no evidence or insufficient evidence to sustain a finding of negligence against Furr's; that there was no evidence or insufficient evidence to sustain a finding of no negligence on the part of Athena Logan; that there was no evidence or insufficient evidence to support the jury's findings on damages; and that the trial court erred in overruling Furr's post-judgment motions. Defendant Water Vend brings three points of error. In the first two, it claims that there was no evidence or insufficient evidence to support the jury's findings of negligence against Water Vend and no negligence on Ms. Logan's part was established as a matter of law. In its third point of error, Water Vend mounts no evidence and insufficient evidence challenges to the jury's findings of future damages.

### STANDARDS OF REVIEW

Most of the points of error raised by defendants Furr's and Water Vend are evidentiary attacks: that jury findings are supported by no evidence, insufficient evidence, are against the great weight and preponderance of the evidence, or that the converse of

a finding was established as a matter of law. In reviewing these points, we must employ the appropriate well-established standards.

In reviewing a "no evidence" or legal sufficiency claim, we examine only the evidence favorable to the verdict and disregard all evidence to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). We may reverse on a no evidence point only if the record reflects no evidence necessary to support a vital fact, or if the evidence raises only a suspicion of the fact's existence. *Cecil v. Smith*, 804 S.W.2d 509, 510 n. 2 (Tex.1991). In reviewing a factual sufficiency or great weight and preponderance claim, we examine all evidence presented at trial, and may reverse only if the challenged finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 481 (Tex. App.—El Paso 1993, no writ). We may not substitute our own conclusions for those of the jury, and we may not resolve conflicts in the evidence or pass upon the credibility of the witnesses. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951); *McCulley*, 860 S.W.2d at 481. Where the evidence is conflicting, the jury's verdict is generally conclusive on the matter. *Id.*

In reviewing a "matter of law" challenge, we first examine the record to see if any evidence supports the finding, ignoring all evidence to the contrary. If no evidence supports the finding, we then determine whether the evidence conclusively establishes its converse. If so, we must reverse. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

### POINTS OF ERROR

#### 1. No duty

In its first point of error, Furr's argues that, as a matter of law, it owed Athena Logan no duty. This argument is twofold: initially, Furr's claims that under the Texas Supreme Court's decision in *Brownsville Navigation District v. Izaguirre*, 829 S.W.2d 159 (Tex.1992), ice or water on the ground in plain view cannot be an unreasonably dan-

gerous condition; and second, that Furr's had no duty to warn because Ms. Logan knew and appreciated the danger, and because the store was closed when she fell, Furr's could not be charged with knowledge of any dangerous condition. We are not persuaded by these arguments.

■ First, we find Furr's reliance on the *Izaguirre* opinion misplaced. There, the family of Epigmenio Izaguirre sued the Brownsville Navigation District which had leased unimproved land to Mr. Izaguirre's employer. The employer built a warehouse on the property. *Id.* at 160. The district retained no control over the employer's warehouse activities. *Id.* at 161. Mr. Izaguirre was killed when a trailer he was loading shifted and fell to one side, crushing him. The trailer was resting on a board which kept it from sinking into soft mud created by a recent rain; the trailer fell, with Mr. Izaguirre inside, when the board broke. The family's theory of liability was that the District, as lessor, had a duty to warn the employer of a dangerous condition, namely that the leased ground became soft and muddy when wet. The Supreme Court held to the contrary, that the general rule applied that "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." *Izaguirre,* 829 S.W.2d at 160, quoting Restatement (Second) of Torts § 356 (1965). The Court rejected the family's attempt to invoke an exception to the general lessor liability rule, that a lessor is subject to liability where the lessee does not know or have reason to know of an unreasonable risk of harm, and the lessor knows of the risk and has reason to expect that the lessee would not discover the condition or the risk. In so holding, the Court observed:

[T]he only dangerous condition asserted by plaintiffs in this case is that the ground became soft and muddy when wet, like any ordinary dirt. This is not a condition 'which involves unreasonable risk of physical harm to persons on land' nor is it a condition of which [the employer] would not know, or at least not have reason to know. *Id.* at 161.

In *Izaguirre,* the Court was addressing the liability of a lessor who retained no control over the leased premises; the case does not stand for the broad proposition for which Furr's cites it, that is, that Furr's, Inc. did not owe the Appellee a duty because ice or water in plain view on a parking lot or sidewalk is not an unreasonably dangerous condition. Furr's was not merely a lessor, but the premises owner and operator of a business open to the public. Its duty toward a business invitee, therefore, was greater than that of the premises lessor in *Izaguirre* and has been long settled in this state: a possessor of land is liable to business invitees if the possessor (1) knows or by the exercise of reasonable care would know of the condition, and should realize that it involves an unreasonable risk of harm to invitees; and (2) fails to exercise reasonable care to protect invitees against the danger. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983), quoting Restatement (Second) of Torts § 343 (1965)[1]; *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 454–55 (Tex.1972). As *Corbin* formulates the test:

[A]n occupier's liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition, not on whether a specific set of facts or a specific breach of duty is established. *Corbin,* 648 S.W.2d at 295.

We do not see how *Izaguirre* alters that test; it does not purport to hold that a natural condition can never be the basis of premises liability, not does it hold that where an invitee is aware or should be aware, to some degree, of the risk involved in a condition, that the owner is never liable as a matter of law. We therefore conclude that plaintiff

---

1. *Corbin* acknowledged that the Restatement contains another element for testing premises owner liability: whether the owner could expect the invitee to discover or realize the danger, or fail to protect against it. This element, however, was subsumed by Texas's adoption of the comparative negligence doctrine; "[t]he invitee's knowledge and conduct are now factors the jury must weigh in determining whether the invitee was contributorily negligent, not whether the premises occupier was negligent." *Corbin,* 648 S.W.2d at 295 n. 1.

Logan was entitled to have a jury decide whether Furr's was negligent in failing to reduce or eliminate the risk that she would slip and fall on ice that Furr's knew was there, in her attempt to buy water from Water Vend's machine located on Furr's property and within Furr's control.

■ Furr's next argues that it owed no duty to plaintiff Logan because she was aware of the danger, and a warning would have been superfluous to one who already knew and appreciated the danger of slipping on ice. In support of its argument, Furr's cites Athena Logan's testimony that she knew water was leaking from the water machine, she saw ice on the ground, and she nonetheless decided to purchase water, walking from car to machine four times before she fell. Logan warned her granddaughter to stay away from the hazard, as she understood that water and ice are slippery. Furr's cites no authority for this theory, and for good reason. As we see it, this is an evocation of the old "no duty" doctrine, which formerly held that if an invitee knew or should have known of open and obvious dangers, the premises owner owed no duty to warn or protect the invitee. The Supreme Court has long since abolished this doctrine, stating that instead premises liability cases are to be tried under the principles of comparative negligence. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex.1978). These complaints are therefore more properly addressed under Furr's points of error having to do with the jury's failure to find Ms. Logan contributorily negligent. We will discuss them there.

■ Finally, Furr's asserts that because the store was closed on Christmas Day, Furr's did not and could not have known of the dangerous condition, thus precluding any duty on its part. The record does not support this contention. Rather, it is filled with evidence that Furr's assistant manager knew the leaking water machine was a continuous problem, that he called Water Vend several times complaining of the leak, that the leak was hazardous, that he saw ice and water around the machine only a day before Ms. Logan's accident, and that Furr's salted the sidewalk in an attempt to protect customers.

There is ample proof that Furr's knew of the condition created by the leaking water machine and appreciated the danger it presented. Furr's Point of Error One is overruled.

## 2. Negligence findings

In its Points of Error Two through Nine, Furr's challenges various jury findings that Furr's was negligent, that Logan was not negligent, and assessing percentages of fault. Water Vend, in its Points of Error One and Two, challenges the trial court's refusal to grant its motions for judgment N.O.V. and new trial. These points fall into two categories: (1) those claiming the jury's findings that Furr's and Water Vend were negligent, and assessing percentages of fault, were supported by no evidence or insufficient evidence; and (2) those claiming the jury's failure to find Athena Logan negligent, and assessing her percentage of fault at zero, were against the great weight and preponderance of the evidence, and that her negligence was established as a matter of law. We will address these contentions separately.

■ The jury found that Furr's negligence was a proximate cause of Athena Logan's slip and fall and that it was 60 percent at fault. To establish a premises owner's liability for injury to an invitee, plaintiff must establish that the premises owner had actual or constructive knowledge of a condition that posed an unreasonable risk of harm to invitees, and failed to take whatever action was reasonably prudent under the circumstances to reduce or eliminate the unreasonable risk. *Corbin*, 648 S.W.2d at 295. The record in this case is rife with evidence of Furr's negligent failure to eliminate the dangers posed by the leaking water dispenser on its premises. Although the store was closed on Christmas Day, the water vending machine was outside where customers had continual access to it, and Furr's knew this. Although Furr's was not primarily responsible for maintaining the machine, it was responsible for care of its premises, including the sidewalk where the machine was located and the parking lot. Furr's had the responsibility of keeping the premises outside its store in a reasonably safe condition, and that included maintaining or disabling the water dispenser

so it would not leak water in freezing weather. Furr's manager testified that the only actions he took to eliminate the unreasonable risk posed by the defective machine were to call Water Vend and complain, and to spread salt on the sidewalk once. Furr's did not attempt to shut off the water or power to the machine before the Christmas holiday, did not post an "out of order" sign on the machine, nor did it cancel its contract with Water Vend despite the continuing problems with the water and ice. This evidence is ample to establish Furr's negligence, and to support the jury's finding that the store was 60 percent responsible. Furr's Points of Error Two, Three, Eight, and Nine are overruled.

◼ Water Vend likewise urges that the evidence failed to establish its negligence and its 40 percent responsibility claiming that plaintiff failed to establish a causal connection between the ice on which she slipped and the flow of water from the leaking water machine. Water Vend states that it was as likely that the ice came from a recent storm as from Water Vend's machine. We disagree. The only evidence of inclement weather was testimony from Steve Coombs, uncle of Water Vend's owner. He testified that there were ice storms in West Texas the week before Christmas, and that on the 22nd or 23rd, there was ice along the front of Furr's. He also testified, however, that there was ice from the leaking water machine on the sidewalk as well. National Climatic Data Center reports for 12/24/89, 12/25/89, and 12/26/89 for Midland/Odessa, introduced by Furr's, show that the weather was clear each of those days. Although the low temperature on these days was cold—below freezing—the maximum temperature was above sixty degrees fahrenheit each day, sufficient to melt any ice from a storm several days before. Thus, Water Vend's evidence that this ice was from naturally occurring weather conditions is quite weak. Evidence that the ice came from Water Vend's leaking machine, in contrast, is abundant. Furr's assistant manager testified that he saw a "trail of ice where the water had run down and froze." He stated that the source of the water and ice was the leaking machine. He personally saw, and was told by customers, that water from the machine was running out the bottom and across the sidewalk. This was the situation on Christmas Eve, the day before Ms. Logan's accident. Members of Ms. Logan's family testified similarly, that the machine was always leaking. We conclude that the causal relationship between Water Vend's leaking machine and the ice that caused Ms. Logan's broken ankle was well established. Water Vend's Point of Error One is overruled.

◼ Conversely, Furr's and Water Vend urge that Athena Logan's negligence was established as a matter of law, or alternatively that the jury's failure to find her contributorily negligent was against the great weight and preponderance of the evidence. We agree that Ms. Logan, as a business invitee, was under a duty to use reasonable care for her own protection against dangers of which she knew or should have known. *M.D. Anderson Hospital & Tumor Institute v. Felter*, 837 S.W.2d 245, 248 (Tex. App.—Houston [1st Dist.] 1992, no writ). This Court has jurisdiction to reverse and remand a case when we conclude that the jury's failure to find a fact is against the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988). The burden of proof is upon the defendant to establish the plaintiff's contributory negligence. *Safeway Stores, Inc. v. Bozeman*, 394 S.W.2d 532, 538 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). The jury's failure to find need not be supported by affirmative evidence. *M.D. Anderson*, 837 S.W.2d at 248. Furr's and Water Vend urge that they conclusively established Ms. Logan's negligence through her testimony that she saw water in front of the machine, walked around it to make sure she did not step in it, warned her granddaughter away from it, knew that ice and water were slippery substances, and nonetheless left the safety of her car to purchase water.

This is not, however, the sum of evidence on this point. Ms. Logan also testified that although she saw some ice and water on the sidewalk near the machine, she saw none on the asphalt parking lot where she fell. She

testified that she avoided all the ice she saw and that if she had seen the ice on the asphalt, she would have avoided it too. She was wearing tennis shoes, and there was no evidence that she was walking in anything other than a normal manner. Furr's assistant manager testified that on the day following the accident, he too could see ice on the cement sidewalk, but not on the asphalt parking lot. A jury believing Ms. Logan's testimony could conclude that she was exercising reasonable care by avoiding all the ice she saw in her trips from car to water machine and back, and that a reasonably prudent person would not have seen ice on the asphalt. We find that defendants have not established, either as a matter of law or by the great weight and preponderance of the evidence, that Ms. Logan negligently failed to exercise reasonable care for her own safety. This was a wet parking lot on a cold day, not the Temple of Doom. Furr's Points of Error Four, Five, Six, and Seven are overruled, as is Water Vend's Point of Error Two.

### 3. Damage findings

In its Points of Error Ten through Nineteen, Furr's claims there is no evidence, or insufficient evidence, to support the jury's findings on damages. In its third point of error, Water Vend challenges the jury's award of future damages.

First, we note that Furr's complains repeatedly that plaintiff did not specify dollar values for the various elements of her damage. It claims this renders defective the jury's award for Ms. Logan's future medical care, past and future pain and anguish, and past and future physical impairment. This is not the law. Personal injury damages of this sort are not capable of measurement by a specific standard, and amounts awarded are uniquely within the province of the trier of fact. *Southwestern Bell Telephone Co. v. Wilson,* 768 S.W.2d 755, 763 (Tex.App.—Corpus Christi 1988, writ denied). The amount awarded for future damages is necessarily subject to some guesswork, and the amount of such awards is largely within the jury's discretion. *Romero v. CMA, Inc.,* 808 S.W.2d 157, 159 (Tex.App.—El Paso 1991,

writ denied). Similarly, an award for physical pain and mental anguish, which this Court has held to be a particularly subjective non-pecuniary loss, is within the jury's broad discretion and once the right to recover some amount for these damages is established, the amount of such award is "virtually unreviewable." *Worsham Steel Company v. Arias,* 831 S.W.2d 81, 85 (Tex.App.—El Paso 1992, no writ); *Brown v. Robinson,* 747 S.W.2d 24 (Tex.App.—El Paso 1988, no writ). There is no requirement that plaintiff place specific dollar values on elements of damage for which no mathematical formula can be set. This argument fails.

Furr's next urges that the jury's award for future medical care must be set aside because there is no evidence, based upon reasonable medical probability, as to the amount of money necessary to furnish Ms. Logan with future medical care. This is not the standard for determining future damages in personal injury cases. Texas follows the "reasonable probability" rule for future damages, including future medical expenses. *City of San Antonio v. Vela,* 762 S.W.2d 314, 321 (Tex.App.—San Antonio 1988, writ denied); *Hughett v. Dwyre,* 624 S.W.2d 401, 405 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). The jury may make its award for future medical care based upon the nature of plaintiff's injuries, medical care rendered before trial, and the plaintiff's condition at the time of trial. *Id.* Plaintiff is not required to establish the future medical consequences of her injury by expert testimony based on reasonable medical probability. *Id.* The evidence here established that Ms. Logan sustained a serious ankle fracture, that she had a thyroid condition that complicated the healing process, and that for her broken ankle to heal would take ten times longer than normal. According to her treating physician, she was still in the healing process at the time of trial and he expected it to take another two years for her to heal completely. At the time of trial, she still had constant pain, burning sensations, swelling, stiffness, and loss of motion. She was under the care of a doctor and had already expended over $4,000 in medical costs. This was adequate evidence to support the jury's award of $2,200 in future medical care.

Furr's also complains that the evidence on future physical impairment was lacking. The evidence recited above supported this element of damage, as does the additional statement from Ms. Logan's treating physician's records that she had a 10 percent permanent impairment to her left foot. Furr's Points of Error Ten through Nineteen are overruled.

In its Point of Error Three, Water Vend challenges the jury's award of future damages, claiming that based upon Dr. Martinez's estimate of recovery time, future damages should not exceed 20 percent of the total award. At oral argument, Water Vend's counsel acknowledged that his arithmetic was faulty and therefore the 20 percent figure was inaccurate. In any event, we reject the notion that the jury must follow such a rigid formula, and we note again that Dr. Martinez assessed Ms. Logan a permanent disability, damage which would fall outside Water Vend's calculation. For these reasons, as well as those set out in our discussion of Furr's challenge to the damage award, we conclude that the jury was well within its discretion in answering the damage questions. Water Vend's Point of Error Three is overruled.

### 4. Post-trial motions

In its Points of Error Twenty through Twenty-two, Furr's urges that the trial court erred in overruling its motion for directed verdict, motion for judgment N.O.V., and motion for new trial. These motions urge the same challenges which we have rejected upon appeal; thus, we conclude the trial court was entirely correct in denying them. Alternatively, any error was harmless, and therefore not reversible. TEX.R.APP.P. 81. Furr's Points of Error Twenty through Twenty-two are overruled.

### CONCLUSION

Neither defendant having presented this Court with error requiring reversal, the judgment of the trial court is affirmed.